## Piwoz *v.* Iannacone, Appellant.

590

Argued November 28, 1961. Before BELL, C. J., JONES, COHEN, EAGEN and ALPERN, JJ.

 
 █

*J. Webster Jones,* for appellants.

*David Kanner,* for appellees.

OPINION BY MR. JUSTICE EAGEN, March 13, 1962:

The plaintiff, Norman Piwoz, was operating an automobile owned by his parents, the plaintiffs, Dr. Seymour Piwoz and Ida Piwoz, which was involved in a collision with an automobile owned by the defendant, Emilio Iannacone, and operated by the defendant, Arnold Scott. An action for personal injuries and property damage resulted. A verdict in favor of all plaintiffs and against both defendants was returned by the jury. Motions for a new trial and judgment non obstante veredicto were refused by the court en banc. From the judgments entered upon the verdict, the defendants appealed.

### Judgment n.o.v.

In evaluating the merits of this motion, the evidence must be viewed in the light most favorable to the plaintiffs, giving the verdict-winners the benefit of every fact and inference of fact reasonably deducible from the evidence: *Greco v. 7-Up Bottling Co. of Pittsburgh,* 401 Pa. 434, 165 A. 2d 5 (1960); *Matkevich v. Robertson,* 403 Pa. 200, 169 A. 2d 91 (1961).

Read in this light, the record discloses the following: The Piwoz (plaintiffs') automobile was proceeding east on Baltimore Avenue in the City of Philadelphia. This thoroughfare is a two-way street with a double set of streetcar tracks. It is intersected from the north by 44th Street, which does not continue to run through to the south, thus forming a T intersection. The intersection at the time of the accident was controlled by a traffic light, which was blinking yellow on Baltimore Avenue, calling for caution on the part of traffic proceeding on this thoroughfare; and blinking red on the 44th Street side, directing traffic on this street to stop before proceeding into the intersection.

When plaintiffs' car approached the intersection, it came to a complete stop, 35 or 40 feet from the westerly curb line of 44th Street. The defendant's automobile proceeding south on 44th Street came into the intersection without stopping, made a careening wide turn, crossed over the center line of Baltimore Avenue, skidded and collided with the motionless automobile of the plaintiffs.

The action against the defendant-owner, Iannacone, was based upon the premise that, at the time involved, Scott was his agent and was operating the automobile upon Iannacone's business. The appellants' main thrust in support of the motion for judgment n.o.v. is that the evidence is insufficient as a matter of law to support such a finding. That the evidence was not ample to support a finding that Scott's negligence was the proximate cause of the accident is not asserted.

On the question of agency, the following evidence was adduced: Iannacone operated an automobile repair shop. For approximately a three-year period previously, Scott was instrumental in bringing him automobiles for repair, on the average of four automobiles each week, sometimes seven to ten. He was paid by Iannacone a sum of money, usually by check, for each such job secured, and also enjoyed the privilege of expending sums of money for expenses for which he was reimbursed.

At the direction of Iannacone, Scott carried printed forms of power of attorney, to procure the signatures of the owners of the damaged automobiles, authorizing Iannacone to do the repair work. Scott was also authorized to hire towing trucks from independent firms in order to move the damaged automobiles to Iannacone's repair shop. Scott also carried a key to the shop and was authorized, regardless of the hour, to take the owner of a disabled car to the shop and lend him one of the automobiles, kept in the shop for such purposes,

to be used while his car was being repaired. Scott was known by Iannacone to have at times a short-wave radio set in the car he operated in order to intercept police radio calls concerning automobile accidents so that he could drive quickly to the scene and solicit the necessary repair work for Iannacone. Scott was also told by Iannacone that he was interested in repairing late model automobiles which had not been damaged to such an extent that they were ready to be junked.

On the night of the collision involved in this case, both drivers were interviewed by the police shortly after the occurrence. One of the investigating officers tried to get inside the automobile operated by Scott but found its doors locked. Looking through the window, he saw therein a radio which differed substantially from the conventional model. He described it as one similar to those used on police motorcycles. It is a violation of the regulations of the Federal Communications Commission and the pertinent ordinance of the City of Philadelphia for *auto repair men* to have short-wave radios in their automobiles.

Following the accident, which occurred about one o'clock in the morning, Scott took the plaintiff, Norman Piwoz, to Iannacone's repair shop, opened it with his key, and secured a car from the shop for the plaintiff to use and drive home. Four or five days later, Iannacone phoned the plaintiffs' home, and later came there to see if he could proceed with repairing Piwozs' automobile. An argument took place as to who was going to repair the car and as to whether or not Iannacone had been authorized through Scott to do the job. In the course of the conversation, the following transpired: Iannacone—"You promised to let us fix it . . . . You told *my man, Scott,* that you were going to let us fix it . . . . Well you told Scott and *Scott works for me and that's like telling me.* Why do you think he lent you a car?"

As part of plaintiffs' case, the defendant Iannacone, was called as for cross-examination. He testified, inter alia, that the automobile operated by Scott on the night involved was Iannacone's own personal car; that it had no short-wave radio as part of its equipment; that he loaned the car to Scott as a favor two days before the accident to go to Virginia on Scott's own personal business; that he never requested Scott to secure damaged automobiles for his repair business and in securing them, Scott was an independent agent, and never worked for him; that on the night involved Scott was acting on his own and was not acting under his direction or engaged in any business for Iannacone. It is argued that this evidence was uncontradicted and unimpeached and that, therefore, the plaintiffs are bound thereby. It is further submitted that even if Scott were regularly employed by Iannacone, the evidence is insufficient to show that such employment existed on the occasion involved. With these contentions, we must strongly disagree.

It is well established that where a litigant calls his adversary as for cross-examination pursuant to the Act of May 23, 1887, P. L. 158, §7, 28 PS §381, that the testimony thus obtained is conclusively taken to be true *if it is not rebutted by other evidence*: *Rogan Estate,* 404 Pa. 205, 171 A. 2d 177 (1961). It may always be contradicted by other testimony and if this is accomplished all of the testimony and the truth thereof is for the jury's consideration. Under such circumstances, the testimony of the adversary given on cross-examination is not conclusive: *Morgan v. Phillips,* 385 Pa. 9, 122 A. 2d 73 (1956); *Smith v. Farver,* 173 Pa. Superior Ct. 391, 98 A. 2d 247 (1953). Again, this general rule that a party calling his opponent as for cross-examination is concluded by this testimony is subject to the exceptions that there may be such a degree of improbability in the statements themselves as to de-

prive them of credit, or that the circumstances themselves may constitute sufficient contradiction: *Matthews v. Derencin*, 360 Pa. 349, 62 A. 2d 6 (1948). In short, it is not necessary that the contradiction be in the form of direct testimony: *Burke v. Kennedy*, 286 Pa. 344, 133 Atl. 508 (1926); *Bogdanoff v. Manis*, 346 Pa. 243, 30 A. 2d 321 (1943).

In the present issue, the proven circumstances involving Iannacone and Scott's relationship are more than sufficient to render the former's testimony that Scott was not on his business at the time, or ever employed by him, so incredible as to constitute sufficient contradiction. Further, the proven circumstances are also ample to warrant a finding that the asserted agency existed on the occasion in question. An agent's actual or apparent authority may be established by circumstantial evidence: *Rubin Bros. Waste Co. v. Standard Equipment Co.*, 368 Pa. 61, 81 A. 2d 876 (1951). The fact or character of an agency may always be established by evidence of the course of dealings between the principal and agent: *Culver v. Pocono Spring Water Ice Co.*, 206 Pa. 481, 56 Atl. 29 (1903); *Brientnall v. Peters*, 317 Pa. 356, 176 Atl. 240 (1935). Finally, the statements of Iannacone to the plaintiff, Norman Piwoz, a few days after the accident patently manifest that he himself recognized Scott as "his man," and that on the occasion involved Scott was soliciting business for him. The motion for judgment non obstante veredicto was, therefore, correctly overruled.

## New Trial

Forty-two reasons are assigned in support of the motion for a new trial. These concern rulings on the admission of evidence, alleged prejudicial remarks made by plaintiffs' counsel during the trial, alleged errors in the instructions of the trial court to the jury, and the

complaint that the verdict in favor of the plaintiff, Norman Piwoz, in the amount of $15,000 was excessive.

A studied consideration of the record discloses merit in several of the assignments of error. Hence, a new trial is necessary.

The defendant, Iannacone, was called by the plaintiff as for cross-examination. At that time, he was examined and testified fully as to all pertinent matters within his knowledge. He was not recalled to testify during the defendants' side of the case. The trial judge instructed the jury that his failure to so testify raised *"an implication in the eyes of the law"*[1] that the testimony would not be in his favor. This was basic, fundamental and prejudicial error. A general exception to the charge is all that was necessary in such an instance: *Eisert v. Jones,* 399 Pa. 204, 159 A. 2d 723 (1960).

The failure to produce evidence which would properly be part of the case and which is within the control of a party whose interest it would naturally serve, militates strongly against such party and raises in the absence of explanation an *inference of fact* that it would be unfavorable to him: *Peters v. Shear,* 351 Pa. 521, 41 A. 2d 556 (1945); *Hall v. Vanderpool,* 156 Pa. 152, 26 Atl. 1069 (1893). Such failure, however, raises an inference of fact *not an implication* or *presumption of law*: *Bayout v. Bayout,* 373 Pa. 549, 96 A. 2d 876 (1953). Moreover, the defendant did testify and the failure to have him repeat the same testimony as part of his case in chief is not such a situation as the rule discussed above envisions.

The trial judge permitted the plaintiff, Norman Piwoz, to testify that a Dr. Harris charged the sum of $410 for medical services (neurological examinations and evaluations) rendered to him following the acci-

---

[1] Emphasis ours. No explanation of what "implication" signifies was given to the jury.

dent, and charged the jury that this item of expense was recoverable in the action. This sum constituted a substantial portion of said plaintiff's total out-of-pocket expenses ($945). Dr. Harris was not called as a witness. There was no testimony that the charges were reasonable, or that the services for which they were rendered were necessary or related to the trauma suffered in the accident. The admission of this particular testimony was error. See, *Fougeray v. Pflieger*, 314 Pa. 65, 170 Atl. 257 (1934); *Brown v. White*, 202 Pa. 297, 51 Atl. 962 (1902); *Fisher v. Pomeroy's Inc.*, 322 Pa. 389, 185 Atl. 296 (1936). The error was further aggravated by the court's failure to explain to the jury that it was a proper item of damage only if the charges were reasonable and the services were necessary.

The trial judge also permitted the plaintiff, Norman Piwoz, in his testimony to explain the nature of the tests given by Dr. Harris and *to state why* these tests were made. As stated above, the physician-neurologist was not called as a witness. The plaintiff himself was incompetent to testify as to why these tests were given. We conclude this to be so even though the plaintiff-witness was pursuing studies preparatory to engaging in the practice of medicine.

The trial court also charged that the plaintiff, Norman Piwoz, was entitled to collect the bill submitted by a physician-witness for appearing at trial. This was not a proper item of damage.

Finally, plaintiffs' counsel was guilty of intemperate remarks in argument to the jury. They were undoubtedly prejudicial, distracted the minds of the jurors from the pivotal issues, and influenced the giving of a generous verdict.

For instance, counsel argued, "I smelled something that had the stink of an Arabian hovel on a warm, sultry evening." It appears from his own brief that counsel was then attempting to argue that the defend-

ants were guilty of a criminal conspiracy in using a short-wave radio in the automobile involved in the accident in violation of the regulations of the Federal Communications Commission. The proof did not warrant such an argument and in a civil court trial, such was completely improper.

Counsel are required to stay within reasonable bounds of legitimate argument in making their partisan pleas to a jury. While the withdrawal of a juror for improper remarks is largely within the discretion of a trial judge, in view of all the circumstances this record discloses, we conclude the court failed to exercise a wise discretion in allowing the trial to continue.

Judgments reversed and a new trial ordered.