765 A.2d 786

Jaynet A. MOORHEAD, Administratrix of the Estate
of Catherine B. Baxter, Deceased, Appellant

v.

**CROZER CHESTER MEDICAL CENTER, Appellee.**

Supreme Court of Pennsylvania.

Argued April 27, 1999.

Decided Jan. 29, 2001.

158

Joseph M. Fioravanti, Media, for appellant, Janet Moorhead.

R. Bruce Morrison, Philadelphia, Daniel J. Sheery, for Crozer Chester Medical Center.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION [1]

CAPPY, Justice.

■ The issue in this case concerns the appropriate measure of compensatory damages for past medical expenses.

1. This opinion was reassigned to this author.

For the following reasons, we affirm the order of the Superior Court, although on different grounds.[2]

Appellant's decedent Catherine Baxter ("Baxter") fell and injured herself while she was a patient at Appellee's facility. Appellee provided medical services to Baxter for the injuries she received. Subsequently, Baxter commenced a medical malpractice action against Appellee. Following Baxter's death, Appellant, as administratrix of Baxter's estate, was substituted as the plaintiff. As the case proceeded to trial, an issue arose as to the appropriate measure of compensatory damages for Baxter's past medical expenses. The court reserved that issue for itself and submitted the case to the jury, which returned a verdict in favor of Appellant, awarding $46,500 in non-economic damages including pain and suffering.

In an "Agreed Upon Statement of Facts Pursuant to Pa. R.A.P.1925", the parties established the following facts with regard to the issue of compensation for past medical expenses: Baxter was covered by Medicare as well as a "Blue Cross 65" supplemental plan, for which she had paid premiums. R. 12a. The fair and reasonable value of the medical services rendered to Baxter was $108,668.31. *Id.* The Medicare allowance for those services was $12,167.40. *Id.* Of the $12,167.40, eighty percent was paid by Medicare and twenty percent was paid by Blue Cross 65. *Id.* Appellee was a voluntary participant in the Medicare program and consequently accepted the $12,167.40 as payment in full for the medical services it rendered. *Id.* Appellee cannot obtain the difference of the cost of its services and the Medicare allowance (i.e. $96,500.91) from Appellant or from any other source. R. 12a–13a. Conversely, Appellant never was and never will be legally obligated to pay more than $12,167.40 for the medical services. R. 13a. Appellant contended that she was entitled to the full $108,668.31, while Appellee maintained that her recovery was limited to $12,167.40. R. 12a.

2. We may affirm the order of the court below if the result reached is correct without regard to the grounds relied upon by that court. *Pennsylvania Game Comm'n v. State Civil Service Comm'n (Toth)*, 561 Pa.19, 747 A.2d 887, 888 n.1 (2000) (citations omitted).

The trial court agreed with Appellee that Appellant was entitled to recover $12,167.40, the amount actually paid and accepted as full payment for the medical services rendered by Appellee. On appeal, a divided panel of the Superior Court affirmed, but on different grounds. Two judges, relying on *Kashner v. Geisinger*, 432 Pa.Super. 361, 638 A.2d 980 (1994), determined that the reasonable value of the services was $108,668.31, but that Appellee was entitled to a setoff of $96,500.91 since Appellee, as tortfeasor, forgave that amount, thereby contributing that amount towards its liability. *See* Restatement (Second) of Torts § 920A(1)[3]. Since Appellee's liability for damages after the setoff was $12,167.40, the same amount awarded by the trial court, the Superior Court affirmed the trial court's judgment. One judge dissented, arguing that Appellee was not entitled to a setoff for forgiving the excess amount because Appellee was contractually bound to accept that amount and therefore made no contribution to Appellant that Appellant had not already received from Medicare.

Appellant contends that Appellee is not entitled to a setoff because it was contractually bound to accept the Medicare allowance and therefore made no payment to Baxter; that a setoff presupposes an existing obligation of the plaintiff which in this case is non-existent; that the collateral source rule precludes Appellee from profiting from the Medicare benefits; and that the Superior Court's decision arbitrarily assigns second-class claimant status to senior citizens who provide for their retirement medical expenses. Appellee counters that the trial court correctly determined that the reasonable value

**3.** Section 920A, entitled "Effect of Payments Made to Injured Party", provides:

(1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.

(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

of the services was the amount actually paid, and in the alternative, the Superior Court properly granted a setoff.

■ On appeal, conclusions of law are always subject to our review. *Fiore v. Fiore*, 405 Pa. 303, 174 A.2d 858, 859 (1961). As this issue involves a question of law, our scope of review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995). The issue we must resolve is this: is Appellant entitled to collect the additional amount of $96,500.91, or is her recovery limited to $12,167.40, the amount actually paid for the medical services? We find that consistent with principles of fair compensation, she is entitled to the amount actually paid.

■ Initially, we will address Appellant's contention that Appellee is bound by the "Agreed Upon Statement Pursuant to Pa.R.A.P.1925," which indicates that the fair and reasonable value of the medical services is $108,668.31. R. 12a. "Parties may by stipulation resolve questions of fact or limit the issues, and, if the stipulations do not affect the jurisdiction of the court or the due order of the business and convenience of the court, they become the law of the case." *Parsonese v. Midland Nat'l Ins. Co.*, 550 Pa. 423, 706 A.2d 814, 815 (1998) (citations omitted). In this case, the statement was only as to facts (R.R. 11a), and this court's review of a legal issue cannot be supplanted by a stipulation. *See Pittsburgh Miracle Mile Town & Country Shopping Center v. Board of Property Assessment, Appeals & Review of Allegheny Co.*, 417 Pa. 243, 209 A.2d 394 (1965) (stipulation as to fair market value is merely evidentiary expedient on appeal and does not change court's obligation to determine correctness of the assessment as a whole). It is clear that Appellee was not conceding that Appellant was entitled to the full $108,668.31; to the contrary, both parties agreed that Appellee contended that Appellant's recovery should be limited to $12,167.40. R.12a. The stipulation cannot preclude this court's evaluation of the legal issue regarding the amount of damages to which Appellant is entitled.

▇▇▇ Pennsylvania case law allows a plaintiff to recover the reasonable value of medical services. *See, e.g., Piwoz v. Iannacone,* 406 Pa. 588, 178 A.2d 707 (1962); *Fougeray v. Pflieger,* 314 Pa. 65, 170 A. 257 (1934). The controlling question in this case is whether the definition of "reasonable value" permits an injured party to recover from the tortfeasor damages in an amount greater than the amount that the plaintiff has actually paid or for which he or she has incurred liability. We find that the amount paid and accepted by Appellee as payment in full for the medical services is the amount Appellant is entitled to recover as compensatory damages.

▇▇▇ "The expenses for which a plaintiff may recover must be such as have been actually paid, or such as, in the judgment of the jury, are reasonably necessary to be incurred." *Goodhart v. Penn. R.R. Co.,* 177 Pa. 1, 35 A. 191, 192 (1896). Appellant concedes that pursuant to agreements with Medicare and Blue Cross, Appellee was contractually obligated to accept $12,167.40 as full payment for services rendered. When a plaintiff will continue to incur expenses for medical services, it is appropriate for the factfinder to determine the amount of damages which will compensate the plaintiff for those expenses that "are reasonably necessary to be incurred." Conversely, where, as here, the exact amount of expenses has been established by contract and those expenses have been satisfied, there is no longer any issue as to the amount of expenses for which the plaintiff will be liable. In the latter case, the injured party should be limited to recovering the amount paid for the medical services. See 25 Corpus Juris Secundum, Damages § 91(3) (1996 & Supp.1999) ("Where the amount paid for medical services is in accordance with a contractual schedule of rates, recovery is limited to that amount although the reasonable value of the services in the absence of contract is higher.") (footnote omitted).

This evaluation of the reasonable value of services is in accord with the Restatement (Second) of Torts, § 911 comment h (1977), which states: "When the plaintiff seeks to recover for expenditures made or liability incurred to third

persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged. If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid, except when the low rate was intended as a gift to him." It also is consistent with the approach taken in other jurisdictions. *See Hanif v. Housing Authority of Yolo County,* 200 Cal.App.3d 635, 641, 246 Cal.Rptr. 192 (1988) (declining to award plaintiff amount in excess of the amount actually paid by Medi–Cal, and stating "when the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum certain is the most the plaintiff may recover for that care despite the fact it may have been less than the prevailing market rate."); *Bates v. Hogg,* 22 Kan.App.2d 702, 921 P.2d 249, *rev. den.* 260 Kan. 991 (1996) (plaintiff properly prohibited from admitting evidence of market value of medical services; because of medical provider's contractual agreement, the amount allowed by Medicaid represented the customary charge under the circumstances). Given Appellee's contractual obligations, the trial court did not err in determining that Appellant was limited to recovering $12,167.40, the amount that was paid and accepted as payment in full for past medical expenses.

 Awarding Appellant the additional amount of $96,500.91 would provide her with a windfall and would violate fundamental tenets of just compensation. It is a basic principle of tort law that "damages are to be compensatory to the full extent of the injury sustained, but the award should be limited to compensation and compensation alone." *Incollingo v. Ewing,* 444 Pa. 299, 306, 282 A.2d 206, 228 (1971) (citations omitted). Appellant never has, and never will, incur the $96,500.91 sum from Appellee as an expense. We discern no principled basis upon which to justify awarding that additional amount.

Our approach is consistent with theories of fair compensation reflected in Pennsylvania case law, such as the following: remedies seek to put the injured person in a position as nearly

as possible equivalent to his or her position prior to the tort, *Trotsky v. Civil Service Comm'n, City of Pittsburgh,* 539 Pa. 356, 652 A.2d 813, 817 (1995); evidence of damages cannot be presumed (*Maxwell v. Schaefer,* 381 Pa. 13, 112 A.2d 69, 73 (1955)) and must be reasonably precise in order to provide the jury with an adequate framework upon which to base a verdict, *Nakles v. Union Real Estate Co. of Pittsburgh,* 415 Pa. 407, 204 A.2d 50, 52 (1964); an injured party cannot recover twice for the same injury, on the theory that duplicative recovery results in unjust enrichment, *Rossi v. State Farm Auto. Ins. Co.,* 318 Pa.Super. 386, 465 A.2d 8, 10 (1983); the loss the injured person sustained should be compensated with the least burden to the wrongdoer, consistent with the idea of fair compensation to the person injured, *Incollingo,* 282 A.2d at 228; a plaintiff has a duty to mitigate damages, *Thompson v. De Long,* 267 Pa. 212, 110 A. 251, 253 (1920); and a defendant may show such facts in mitigation to preclude the plaintiff from obtaining full compensation for damages occasioned by himself or herself, *see Robison v. Rupert,* 23 Pa. 523, 525 (1854).

Additionally, we find that the collateral source rule is inapplicable to the additional amount of $96,500.91. The rule "provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer. [Citation omitted]. The principle behind the collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall that for a tortfeasor to be relieved of responsibility for the wrong." *Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96, 100 (1995). Appellant relies upon comment b to the Restatement (Second) of Torts § 920A, which provides in pertinent part: "If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers." Appellant also cites to comment c of that same section, which provides that

Social Security benefits are the type of collateral benefits which cannot be subtracted from the plaintiff's recovery.

Clearly, Appellant is entitled to recover $12,167.40, the amount which was paid on her behalf by Medicare and Blue Cross, the collateral sources. *See* Restatement (Second) of Torts § 920A(2), *supra,* note 2. But the essential point to recognize is that Appellee is not seeking to diminish Appellant's recovery by this amount. Rather, the issue is whether Appellant is entitled to collect the additional amount of $96,500.91 as an expense. Appellant did not pay $96,500.91, nor did Medicare or Blue Cross pay that amount on her behalf. The collateral source rule does not apply to the illusory "charge" of $96,500.91 since that amount was not paid by any collateral source. *See McAmis v. Wallace,* 980 F.Supp. 181 (W.D.Va.1997) (collateral source rule did not require that plaintiff recover the amount of the Medicaid write-off since no one incurred the written-off amount); *Bates, supra* (collateral source rule did not apply to amount written off pursuant to Medicaid contract).

Accordingly, we affirm the order of the Superior Court, but on different grounds.[4]

4. Because of the Superior Court's reliance on *Kashner v. Geisinger,* 432 Pa.Super. 361, 638 A.2d 980 (1994), the reasoning of that case warrants further commentary. In *Kashner,* the plaintiff was treated at Geisinger Medical Center (GMC) and Geisinger Clinic (the Clinic) by Dr. Arthur Colley. The plaintiff brought a medical malpractice action against all three providers; the Clinic and Dr. Colley each were found to be fifty percent negligent. While a portion of the plaintiff's medical bills were paid by the Department of Public Welfare (DPW), the remainder were "written off" by GMC and forgiven by the Clinic. The trial court limited the amount of medical expenses submitted to the jury to the amounts paid by DPW. The Superior Court reversed, finding that the trial court erred in preventing the plaintiff from proving medical expenses in excess of the amounts paid by DPW. The court determined that "the amount actually paid for medical services does not alone determine the reasonable value of those medical services. Nor does it limit the finder of fact in making such a determination." 638 A.2d at 983 (citations omitted).

In support of this proposition, the *Kashner* court summarized a holding in *Brown v. White,* 202 Pa. 297, 51 A. 962 (1902) as "the damages entitled to plaintiff for medical expenses are determined by assessing what would reasonably compensate the physicians providing the services regardless of what the physicians had actually been paid."

Justice SAYLOR did not participate in the consideration or decision of this matter.

Justice ZAPPALA concurs in the result.

Justice NIGRO files a dissenting opinion.

NIGRO, Justice, dissenting..

Because I cannot agree that the amount actually paid and accepted by Appellee ("Crozer") as payment in full for the medical services rendered ($12,167.40) is the amount Appellant's decedent ("Baxter") is entitled to recover as compensatory damages, I must respectfully dissent. Instead, I would affirm that portion of the Superior Court's decision in which it found that Baxter is entitled to the reasonable value of the medical services provided ($108,668.31).

638 A.2d at 983. This interpretation in the context of this case is misleading. In *Brown,* the trial court held that the plaintiff was entitled to recover damages for expenses incurred for medical service rendered by her physicians, although there was no evidence showing the amount of money expended for the services, nor what the services were reasonably worth. In sustaining this allegation of error, the *Brown* court held that the plaintiff must "furnish the jury evidence from which they could determine what had been paid for such services, or such amounts as the services were reasonably worth." 51 A. at 965.

Additionally, the *Kashner* court relied upon D. Dobbs, Handbook on the Law of Remedies, § 8.1 at 543 (1973) which stated: "The measure of recovery is not the cost of services ... but their reasonable value. ...[R]ecovery does not depend on whether there is any bill at all, and the tortfeasor is liable for the value of medical services even if they are given without charge, since it is their value and not their cost that counts." A more recent version of that same treatise indicates in the very next sentence that: "It has been said, however, that if the provider of medical services charges less than their value without intending a gift, the plaintiff's recovery is limited to the liability incurred." D. Dobbs, Handbook on the Law of Remedies § 8.1(3) at 377 (1993) (footnote omitted). Thus, we do not find the quoted language in *Kashner* to be a complete or final authority on this issue.

Finally, the *Kashner* court relied on the Restatement (Second) of Torts § 924, cmt. f (1979) which states: "The value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person, as when a physician donates his services (See § 920A)." As noted above, we find another provision, Restatement (Second) of Torts § 911, cmt. h, which limits the tortfeasor's liability to the amount paid if it is "less than the exchange rate" unless "the low rate was intended as a gift to [the injured party]", to be more applicable to the instant case.

As noted by the majority, the primary objective of a compensatory damage award is to provide just compensation for the injured party's loss, so that the injured party may be made whole, and be restored to a position as nearly as possible equivalent to her position prior to the tort. *See, e.g., Trosky v. Civil Serv. Comm'n., City of Pittsburgh,* 539 Pa. 356, 652 A.2d 813 (1995); *Feingold v. Southeastern Pennsylvania Transp. Auth.,* 512 Pa. 567, 517 A.2d 1270 (1986). To that end, compensatory damages are imposed to shift the loss from a wholly innocent party to one who is at fault. *Esmond v. Liscio,* 209 Pa.Super. 200, 213, 224 A.2d 793, 799–800 (1966). A personal injury plaintiff's recovery for past medical expenses made necessary by a tortfeasor's wrongdoing is limited to the reasonable value of the medical services provided. *See Kashner v. Geisinger Clinic,* 432 Pa.Super. 361, 367–68, 638 A.2d 980, 983 (1994)(discussing plaintiff's right to recover reasonable value of medical services made necessary by tortfeasor's wrongdoing and noting that trier of fact must look to a variety of factors in determining the reasonable value of the medical service provided); *see also Piwoz v. Iannacone,* 406 Pa. 588, 178 A.2d 707 (1962); *Brown v. White,* 202 Pa. 297, 312, 51 A. 962, 965 (1902); *Ratay v. Yu Chen Liu,* 215 Pa.Super. 547, 260 A.2d 484 (1969); 1 SUMMARY OF PENNSYLVANIA JURISPRUDENCE 2D § 9:59 (West 1999).

Unlike the majority, I believe the circumstances in the instant case clearly indicate that Baxter is entitled to $108,668.31 in compensatory damages. In finding that Baxter is only entitled to $12,167.40 in compensatory damages, the majority makes much of the fact that Crozer was contractually obligated to accept that amount as payment in full. While that may be true, such reasoning fails to take into account the fact that if Baxter had not been covered by Medicare and Blue Cross 65 or some other health insurance at the time of her fall at Crozer, she would have been personally responsible to Crozer as her medical provider for her entire medical bill of $108,668.31. Perhaps more importantly, the parties actually stipulated that $108,668.31 was the reasonable value of the

medical services rendered to Baxter following her fall.[1] Thus, I agree with the Superior Court that Baxter is entitled to the reasonable value of the medical services provided to her by Crozer.[2]

In reaching a different conclusion, i.e., finding that Baxter is only entitled to $12,167.40 as compensatory damages, the majority determines that where the amount initially billed by a plaintiff's health care provider is greater than the amount

1. It bears noting that Crozer could have litigated the reasonable value of the medical services it provided to Baxter in the trial court and could have argued to the trier of fact that the amount accepted as payment in full for such services from Medicare and Blue Cross 65 is the most accurate barometer for calculating the reasonable value of the medical services provided to Baxter. But Crozer forewent that opportunity, and instead opted to stipulate to the reasonable value of the services while arguing that: (1) Baxter's compensatory damages should be limited to the amount of the payment from Medicare and Blue Cross 65; and (2) it was entitled to a setoff in the amount of the difference between the reasonable value of the medical services provided and the amount accepted as payment in full from Medicare and Blue Cross 65.

2. As the majority notes, however, the Superior Court also found that Crozer is entitled to a setoff in the amount of the difference between the reasonable value of the medical services provided ($108,668.31) and the amount accepted as payment in full ($12,167.40). I disagree with this finding. "It is only where the tortfeasor himself makes a payment towards his tort liability that the payment will have the effect of reducing his liability." *Kashner*, 432 Pa.Super. at 368, 638 A.2d at 984. No such payment in the form of free medical services or a voluntary relinquishment of a right to collect occurred in the instant case. Crozer was required, pursuant to its preexisting contract with the federal government to participate in the Medicare program, to provide the services in question for $12,167.40. In my view, Appellant should not be made to bear the cost of Crozer's agreement with the federal government, and Crozer should not be granted a setoff simply because it chose to become a Medicare provider and subsequently treated Baxter for the injuries she sustained due to Crozer's own negligence. *See* RESTATEMENT (SECOND) OF TORTS § 920A(2)(1979)("[B]enefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."). As noted by Judge Olszewski in his dissenting opinion below, "[Crozer] did not contribute anything to [Baxter] that [Baxter] had not already received from Medicare." *Moorhead*, 705 A.2d at 456 (Olszewski, J., dissenting). Thus, I would reverse the decision of the Superior Court to the extent that it granted Crozer a setoff in the amount of the difference between the stipulated reasonable value of the medical services provided and the amount that Crozer accepted as payment in full for such services pursuant to its voluntary participation in the Medicare program.

eventually accepted by the provider as payment in full for its services, the plaintiff's compensatory damages for past medical expenses should be limited to the amount actually paid to the provider. By doing so, the majority carves out a broad exception to the established rule of law in this Commonwealth that personal injury plaintiffs are allowed to recover the reasonable value of the medical services made necessary by the wrongdoer's tortious conduct. Contrary to the majority's holding, it is the *value*, and not the ultimate cost, of medical services made necessary by the tortfeasor's negligence that determines the proper measure of compensatory damages for past medical expenses. *See Kashner*, 432 Pa.Super. at 367–68, 638 A.2d at 983 (noting that while the amount actually paid for medical services is relevant to determining the reasonable value of those services, it is still the value of the services, and not the cost, on which recovery of compensatory damages for said services depends); *see also* RESTATEMENT (SECOND) OF TORTS § 924 cmt. f (1979) ("the value of medical services made necessary by a tort can ordinarily be recovered although they have created no liability or expense to the injured person").[3]

In addition, by creating this exception to the rule that injured plaintiffs are entitled to recover the reasonable value of their medical services made necessary by the wrongdoer's tortious conduct, the majority seriously undermines the collateral source rule. This Court recently defined the collateral

---

**3.** I further note that the majority ignores the fact that the underlying bases for tort recovery of medical expenses and the payment of an insured's medical benefits are distinct. The basis for the former is liability—an injured party is entitled to receive compensation, including the reasonable value of medical services, from a culpable tortfeasor. The basis for the latter is contractual—health insurers are contractually obligated to pay medical benefits to, or on behalf of, their insureds. *See* Michael F. Flynn, *Private Medical Insurance and the Collateral Source Rule: A Good Bet?*, 22 U. TOL. L. REV. 39, 65 (1990). Likewise, medical providers are sometimes contractually obligated to accept as payment in full reimbursement from health insurers which is less than the reasonable value of the services actually provided to the insured. By concluding that the contractual obligations between an insured and his or her health insurer and a medical provider and that insurer diminish the insured's recovery of compensatory damages, the majority blurs the distinction between the bases for tort recovery of medical expenses and payment of an insured's medical benefits.

source rule and described the principle behind the rule in *Johnson v. Beane*, 541 Pa. 449, 456, 664 A.2d 96, 100 (1995), where we stated:

> The collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer. *See generally, Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.*, 504 Pa. 618, 476 A.2d 350 (1984). The principle behind the collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong.

By diminishing the amount of compensatory damages otherwise recoverable from a wrongdoer based on payments made to the wronged plaintiff by a collateral source, the new rule advanced by the majority clearly violates the collateral source rule. According to the majority, when a medical provider contracts with a third party payor to accept an amount less than the reasonable value of the medical services provided as payment in full, the purpose of compensatory damages is no longer served by permitting an injured plaintiff to recover the reasonable value of her past medical services made necessary by the medical provider's tortious conduct. The majority repeatedly notes that the actual medical expenses paid on behalf of Baxter by Medicare totaled $12,167.40, and contends that any further recovery against Crozer in the nature of compensatory damages for past medical expenses would constitute a windfall. Although the majority chooses to emphasize the $12,167.40 payment that Medicare and Blue Cross 65 made to Crozer on Baxter's behalf, that is not the proper focus. Rather, the collateral source rule prohibits the wrongdoer from diminishing the damages recoverable against it based on the payments, compensation, or benefits that a collateral source confers on a wronged plaintiff on account of her injury. *See, e.g., Hileman v. Pittsburgh and Lake Erie R.R. Co.*, 546 Pa. 433, 439, 685 A.2d 994, 997 (1996)(collateral source rule prohibits defendants from introducing evidence that the plaintiff received compensation on account of his injury from a collateral source); *Beechwoods*, 504 Pa. at 623,

476 A.2d at 352 (collateral source rule was intended to avoid precluding obtainment of redress for injuries merely because coverage for the injury was provided by a collateral source, such as insurance). In the context of the instant case, then, the focus for collateral source purposes is on the payment, compensation, or benefit conferred on Baxter by Medicare and Blue Cross 65 when they fully covered her post-injury medical treatment at Crozer.

It can hardly be argued that the benefit conferred on Baxter by Medicare and Blue Cross 65 was equal only to $12,167.40, the amount allowed by Medicare and ultimately accepted as payment in full by Crozer. Instead, by fully covering Baxter's post-injury medical services, Medicare and Blue Cross 65 conferred a benefit on Baxter equal to the reasonable value of the medical services provided, which the parties stipulated to be $108,668.31. The collateral source rule dictates that Crozer cannot profit from the benefit that Baxter received from her health insurers, but that is exactly what the majority allows today.[4]

4. In support of its conclusion, the majority also claims that awarding Baxter the additional amount of $96,500.91 would violate the tenets of fair compensation. The majority claims that its conclusion is consistent with several theories: that damages cannot be presumed, that damages must be reasonably precise, that duplicative recovery results in unjust enrichment, that the injured person should be compensated with the least burden to the wrongdoer, and that a plaintiff has a duty to mitigate damages.

There were no presumed damages in this case. In fact, the parties stipulated to the exact amount of the medical expenses: $108,668.31. While it is true that an injured party cannot recover twice for one injury, under the collateral source rule, the tortfeasor is required to pay for all the harm he causes, even if this creates a double compensation for part of the plaintiff's injuries. RESTATEMENT (SECOND) OF TORTS § 920A cmt. b. Moreover, the principle behind the collateral source rule, that it is better for the wronged plaintiff to receive a windfall than for the tortfeasor to pay less than the damages he owes, specifically refutes the majority's contention. *Johnson v. Beane*, 541 Pa. 449, 456, 664 A.2d 96, 100 (1995).

Finally, the majority finds that the principle of damage mitigation applies in the instant case. For example, the majority cites *Robison v. Rupert*, 23 Pa. 523 (1854), where this Court held that the plaintiff could not receive full compensation for damages caused when the defendant shot into a crowd of youths rioting outside his home. I fail to see how this rule of law applies to the instant case. Moreover, it stretches the

In addition, the majority's reliance on Comment h to the Restatement (Second) of Torts § 911 for the assessment of the reasonable value of medical services provided to Baxter is misplaced. While Section 911 generally governs valuation, Comment h deals specifically with the measure of recovery for a plaintiff "who sues for the value of his services tortiously obtained by the defendant's fraud or duress, or for the value of services rendered in an attempt to mitigate damages." That provision is clearly not applicable to the instant case. The majority ignores Section 920A, which specifically explains the effects of benefits provided by collateral sources:

> [Collateral-source benefits] do not have the effect of reducing the recovery against the defendant. The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury. But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance ..., the law allows him to keep it for himself. If the benefit was ... established for him by law, he should not be deprived of the benefit that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him.

RESTATEMENT (SECOND) OF TORTS § 920A cmt. b.

Furthermore, although Comment f to Section 924 of the Restatement (Second) of Torts clearly states that the "value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person," the majority inexplicably finds Section 911 "to be more applicable to the instant case." Majority Opinion, 765 A.2d at 791 n. 4.

bounds of relevance to analogize a patient injured by the negligence of a medical provider to the trespassing plaintiff in *Robison*, who was injured after provoking the defendant landowner.

In my view, the decision of the majority improperly limits the recovery of medical expenses by creating an exception to tortfeasor liability. Although it is the tortfeasor's responsibility to compensate for all harm that he causes, and not just the net loss of the injured party, the majority exempts tortfeasors from liability for collateral benefits received by injured plaintiffs. Based on the above analysis, I would affirm that portion of the Superior Court opinion holding that Baxter is entitled to recover the reasonable value of the medical services ($108,-668.31) provided to her by Crozer as compensatory damages. However, I cannot agree with the Superior Court's conclusion that Crozer is entitled to a setoff for the difference between the reasonable value of the medical services ($108,668.31) and the amount that Crozer accepted as payment in full pursuant to its voluntary participation in the Medicare program ($12,-167.40). Accordingly, I would award Baxter additional compensatory damages in the amount of $96,500.91, which is the difference between the reasonable value of the medical services provided to Baxter and the amount of compensatory damages for past medical expenses awarded by the trial court.