## Colacicco v. Karumbaya

556

C.P. of Lackawanna County, no. 99 CV 2861.

*James F. Mundy,* for plaintiffs.
*David R. Bahl,* for defendant Karumbaya.
*Matthew P. Kerris,* for defendants Moses Taylor Hospital, Wellicha and Creeden.

NEALON, *J.*, January 2, 2004—

ORDER

Defendants have filed motions for summary judgment seeking to dismiss this medical malpractice action on the grounds that the plaintiffs cannot prove any harm that was caused by the defendants' negligence. Defendants concede that they deviated from the applicable standard of care by failing to remove a surgical sponge from plaintiff James Colacicco following his lumbar spine surgery. However, since the sponge was safely removed during a subsequent laminectomy procedure before it caused any pain or infection, the defendants submit that they are entitled to judgment in their favor inasmuch as Colacicco cannot demonstrate any damage traceable to their admitted negligence.

By way of brief background, Colacicco underwent lumbar spine surgery that was performed by Romola Karumbaya M.D. at the Moses Taylor Hospital on February 14, 1994, during which procedure J. Wellicha L.P.N. and M. Creeden R.N. acted as the attending surgical nurses. In the years following this surgery, Colacicco reportedly experienced low back pain and his family physician ordered a diagnostic x-ray on June 11, 1997. (See dkt. entry no. 10, ¶¶14, 19-20.) According to Dr. Karumbaya's office note dated June 12, 1997:

"I was contacted by Dr. Dietrich, radiologist from Moses Taylor Hospital, on 6/11/97 that James Colacicco had a lumbar x-ray which was suspicious for a 4 x 4 sponge in the operative area. I reviewed these films personally and confirmed the same. I then contacted the patient and spoke to both him and his wife. . . . *I relayed my concern that with a foreign body, i.e., sponge, left behind it needs to be re-*

*moved. . . .* It should be noted that I had a lengthy discussion with the patient's wife who was an O.R. nurse in the past— *that though the sponge may not be causing much symptoms it needs to be removed.* The sponge most likely is sterile and walled off, *but it could be a potential source for infection and needs to be removed."* *(Id.,* no. 49, exhibit A.) (emphasis added)

Shortly thereafter, Colacicco came under the care of Michael J. Gratch M.D., Willow Grove, who treated Colacicco on August 8, 1997, September 12, 1997 and October 7, 1997. Dr. Gratch diagnosed Colacicco as suffering from spinal stenosis between the third and fourth lumbar vertebrae (L3-L4) and an MRI scan revealed the presence of a retained surgical sponge in the area of the fifth lumbar vertebrae and sacrum (L5-S1). (Dkt. entry no. 39, exhibit A, pp. 12-13.) At that time, Dr. Gratch "did not believe that [Colacicco] had complaints referable to the foreign body." *(Id.,* p. 15.) Nevertheless, because of Colacicco's persistent low back symptoms, he was scheduled for a laminectomy and fusion with instrumentation at the L3-L4 level. Dr. Gratch advised Colacicco that he would remove the retained sponge at the time of the surgery but "did not think removing the sponge alone would change his symptoms." *(Id.,* p. 18.)

On October 16, 1997, Dr. Gratch performed spinal surgery and discovered a surgical sponge "the size of an egg" that "was fairly well encapsulated" and was situated to the side of the L5-S1 level of the spine. *(Id.,* pp. 20, 23.) During his discovery deposition, Dr. Gratch opined that while he did not believe that the sponge was the cause of Colacicco's low back pain, he nonetheless removed it since it was "a source of potential infection." *(Id.,* pp. 21-22.) Dr. Gratch

further indicated that the site of his L3-L4 surgery and the area where the sponge was found "were in two different locations" and that the "majority of the charges" for the operative procedure that he performed were related to "[t]he surgery at L3-L4." (*Id.,* pp. 23-24.)

In their summary judgment motion, the defendants contend that Dr. Gratch's surgery was necessitated by Colacicco's spinal stenosis rather than the presence of the retained sponge and that its removal was merely incidental to the independently scheduled laminectomy/fusion procedure. Defendants posit that the sponge was not the source of any pain or infection and was removed before it caused any harm to Colacicco. Hence, the defendants advance a "no harm-no foul" argument and assert that they are entitled to judgment in their favor as a matter of law due to the inability of Colacicco to prove any injury or damage proximately caused by the retained sponge. Compare *Mancini v. Yavorek,* 61 D.&C.4th 1 (Northumb. Cty. 2003) (patient developed infection from two retained sponges in her pelvic region and was required to undergo an exploratory laparotomy to remove the sponges and drain an intra-abdominal abscess).

To prevail in a medical malpractice action, a plaintiff must "establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm." *Toogood v. Rogal,* 573 Pa. 245, 254-55, 824 A.2d 1140, 1145 (2003). Expert testimony is usually required to demonstrate the elements of a malpractice claim since medical issues are typically beyond the ordinary knowledge and experience of laypersons, but the doctrine of res ipsa loquitur recognizes a nar-

row exception to that rule for obvious cases in which lay jurors may apply their own knowledge and common sense to deduce an inference of negligence and establish the cause of an injury. In medical malpractice litigation, res ipsa loquitur is reserved for only the most obvious instances of negligence such as "the sponge left in the patient cases." *Id.,* 573 Pa. at 257, 824 A.2d at 1147. See also, *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 473 n.11, 437 A.2d 1134, 1138 n.11 (1981) ("On the other hand there are other kinds of medical malpractice, as where a sponge is left in the plaintiff's abdomen after an operation, where no expert is needed to tell the jury that such events do not usually occur in the absence of negligence."). As stated above, the defendants acknowledge that they deviated from the applicable standard of care by failing to remove the surgical sponge from Colacicco; however, they maintain that Colacicco cannot possibly establish the causation and damage elements of a malpractice claim.

Summary judgment is appropriate under Pa.R.C.P. 1035.2 only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the record must be viewed in a light most favorable to the non-moving party with all doubts as to the existence of a factual issue being resolved against the movant. *Federal National Mortgage Association v. Citiano,* 834 A.2d 645, 647 (Pa. Super. 2003). Summary judgment may be granted only if it is clear and free from doubt that the moving party is entitled to judgment in its favor. *Brotech Corp. v. Delmarva Chemicals Inc.,* 831 A.2d 613, 615 (Pa. Super. 2003); *Ryan v. Asbestos Corp. Ltd.,* 829 A.2d 686, 688 (Pa. Super. 2003).

In opposing the defendants' motion for summary judgment, Colacicco disputes Dr. Gratch's testimony concerning the reason for his consultation and contends that he contacted Dr. Gratch for removal of the sponge rather than surgery at the L3-L4 level.[1] According to Colacicco, following his conversation with Dr. Karumbaya on June 12, 1997, he consulted with local neurosurgeons to remove the retained sponge but they declined to become involved with his care. For that reason, he contacted Dr. Gratch to perform surgery to remove the sponge and following his examination and evaluation by Dr. Gratch, arrangements were made for the surgical removal of the sponge and the contemporaneous performance of a laminectomy/fusion. Colacicco also maintains that Dr. Gratch had to make a larger incision in order to retrieve the sponge at the L5-S1 level of the spine. Additionally, he argues that he is entitled to recover damages for emotional distress that he experienced after being advised by Dr. Karumbaya about the existence of the retained sponge but before it was safely removed by Dr. Gratch four months later.

Colacicco's version of events alone may create a triable issue of material fact with respect to his sponge-related damages. However, even assuming arguendo that Dr. Gratch's testimony was to be accepted in its entirety, genuine issues of material fact still exist. Dr. Gratch testified that most, but not all, of the charges associated with his surgery were related to the laminectomy/fusion. Thus, Colacicco may conceivably recover damages for the minority costs which were related to the removal of the sponge. See *Moorhead v.*

---

1. At one point during his deposition, Dr. Gratch indicated that he did not "have a strong recollection" as to why Colacicco initially consulted him or "how he got down here to see me." (Dkt. entry no. 39, exhibit A, p. 11.)

*Crozer Chester Medical Center,* 564 Pa. 156, 161-63, 765 A.2d 786, 789 (2001) (medical malpractice plaintiff may recover damages for medical expenses in the amount actually paid and accepted as full payment for services rendered).

Moreover, with regard to Colacicco's claim for noneconomic damages, factual issues exist as to whether the sponge removal necessitated a larger incision, thereby resulting in greater scarring or disfigurement. It is hornbook law that a plaintiff may recover damages for any scarring or disfigurement caused by a tort-feasor. See *Rogers v. Moody,* 430 Pa. 121, 126, 242 A.2d 276, 279 (1968) ("Disfigurement is a disablement as much an item of damages as a broken leg."); *Osborne v. Neville,* 102 Lacka. Jur. 132, 161 (2000), *aff'd,* 797 A.2d 381 (Pa. Super. 2002), *appeal denied,* 569 Pa. 694, 803 A.2d 735 (2002). Finally, Colacicco reportedly experienced emotional distress and mental anguish upon learning that a potentially infectious sponge had been left in his body without his consent following his 1994 surgery. Cf. *Montgomery v. Bazaz-Sehgal,* 742 A.2d 1125, 1132 (Pa. Super. 1999) (if an operation is properly performed, albeit by a surgeon operating without the consent of the patient, and the patient suffers no injuries, a jury could nonetheless award damages for mental anguish resulting from the belated knowledge that the operation was performed by a doctor to whom the patient had not given consent), *aff'd,* 568 Pa. 574, 798 A.2d 742 (2002). While it is true that Colacicco never actually developed an infection from the retained sponge, he allegedly suffered four months of fear and anxiety that such an infection could occur. See *Shumosky v. Lutheran Welfare Services of Northeastern Pennsylvania Inc.,* 784 A.2d 196, 201-202 (Pa. Super. 2001) (nurse who was stuck by a needle used on an AIDS patient could re-

cover parasitic damages for fear of possible development of AIDS); *Murphy v. Abbott Laboratories,* 930 F. Supp. 1083, 1087 (E.D. Pa. 1996) (same). Consequently, viewing the record in a light most favorable to Colacicco, we find that there are triable issues of fact pertaining to his economic and noneconomic damages allegedly caused by the defendants' collective negligence.

And now, January 2, 2004, upon consideration of the motions for summary judgment of defendants Romola Karumbaya M.D., Moses Taylor Hospital, J. Wellicha L.P.N. and M. Creeden R.N., the memoranda of law submitted by the parties and the oral argument of counsel on December 30, 2003, and based upon the reasoning set forth above, it is hereby ordered and decreed that the defendants' motions for summary judgment are denied.