## FMRR Development v. Birdsboro Municipal Authority

C.P. of Berks County, No. 13-16623

*Stephen G. Welz*, for plaintiffs.
*Matthew M. Setley*, for defendant.

SPRECHER, *J.*, Dec. 10, 2015—Defendant appeals the verdict docketed on October 7, 2014, which found in favor of plaintiffs and against defendant. This opinion is filed pursuant to Pa. R.A.P. 1925 and supplements the opinion which accompanied the verdict.

## FACTS

Plaintiff, FMMR Development, and plaintiff, Francis X. McLaughlin, filed lawsuits against defendant, Birdsboro Municipal Authority. Plaintiff, Francis A. McLaughlin, is a fifty percent shareholder of plaintiff, FMMR Development. The issues and evidence are the same in both cases, and they were consolidated.

Plaintiffs own residential apartment buildings in the Borough of Birdsboro. The properties are connected to the water supply and sanitary sewer system of defendant, Birdsboro Municipal Authority. These properties have twenty or twenty-one residential apartments. Defendant installed single water meters in each apartment complex, but assigned approximately twenty Equivalent Dwelling Units (EDUs) to each residential apartment building.

Defendant's tiered metered rate schedule is comprised

of three components:

1. Ready-to-serve charge — $15.68 per consumer unit per quarter

2. EDU charge — $3.50 per 1,000 gallons of usage for a domestic establishment

3. Consumption charge — $4.992 per 1,000 gallons up to "quarterly average" of 15,000 gallons per quarter. The consumption rate for water consumed in excess of the quarterly average increases to $7.462 per 1,000 gallons up to a level twice the quarterly average.

The metered rate schedule for sanitary sewer services includes:

1. Ready-to-serve charge — $21.62 per consumer unit per quarter

2. EDU charge for sewer services — $6.8822 per 1,000 gallons of usage for a domestic establishment

3. Consumption charge — $7.215 per 1,000 gallons up to quarterly average of 15,000 gallons per quarter.

Despite the fact that defendant has assigned 20 EDUs to the apartment complexes and has consistently imposed a ready-to-serve charge on twenty EDUs and twenty EDU charges on each apartment complex, it has imposed a single EDU consumption rate on plaintiffs in order to apply the higher charges for consumption in excess of the quarterly usage.

Mr. McLaughlin called the Borough Manager, Aaron Durso about the consumption charges. Mr. Durso helped him to file formal complaints for the two apartment complexes. Mr. McLaughlin received a letter from defendant's solicitor stating that the bills were correct. Mr.

McLaughlin also went to three water authority meetings and did not obtain any relief.

Mr. McLaughlin requested that individual meters be installed at his own expense in each apartment. Defendant refused to allow this. Neither apartment complex ever exceeded 300,000 gallons of usage in one quarter. With 20 EDUs, the threshold for the higher consumption rate is exceeded on the 5th day of every billing cycle.

Keith Hill, a licensed professional engineer and consultant, was qualified as an expert in the field of rate schedules establishment and the analysis of rate schedules. He testified that the purpose of defendant's tiered rate schedule is to promote the conservation of water, a natural resource.

Mr. Durso testified that Mr. McLaughlin can separately meter his apartments, but they would be his sole responsibility as the property owner. The consumption fees, however, would still be based on a single meter rate.

Douglas Rauch, Esquire, defendant's solicitor, testified that defendant has approximately 2,200 customers. Of those customers, 79 properties are multi-family residential properties, and they are all treated the same in the billing practices. The rates encourage conservation and favor the single-family homeowners. Defendant's board of directors believed that it was fair to charge more to people who put a greater burden on the system and the treatment plant by requiring more treatment. Defendant's total revenue would decrease if it would be forced to meter each individual apartment.

Based on this evidence, this court entered the verdict which is the subject of this appeal.

## ISSUES

Defendant raises the following issues in his concise statement of errors complained of on appeal.

1. Whether this court erred in denying defendant's post-trial motions.

2. Whether this court erred in entering an amended verdict in favor of plaintiffs.

3. Whether this court erred in finding that defendant's rates are not established to promote conservation.

4. Whether this court erred in finding that defendant's rates are not established to promote conservation, where plaintiffs failed to present testimony and/or evidence with respect to said finding.

5. Whether this court erred in finding that defendant's rates are discriminatory.

6. Whether this court erred in finding that defendant's rates are unreasonable.

7. Whether this court erred in finding that defendant's rates are arbitrary.

8. Whether this court erred in failing to find and/or conclude as a matter of law that the establishment of defendant's rate structure was arbitrary in nature, in order to upset the same, under Pennsylvania law.

9. Whether this court erred in finding that defendant does not have any regulation concerning the application of consumption charges for multi-unit buildings with single meters.

10. Whether this court erred in finding that defendant's rates are not reasonably proportionate to the service rendered or readily available for use on owners of multi-unit residences.

11. Whether this court erred in finding/concluding as a matter of law that defendant must use the same rate calculation for all residential households for a rate to be reasonable under Pennsylvania law.

12. Whether this court erred in finding/concluding as a matter of law that conservation of water must be essential, if not the only consideration to be evaluated, in the determination of whether defendant's rates are reasonable.

13. Whether this court erred in finding/concluding as a matter of law that the failure to allow individual metering of a multi-unit facility is *de facto* unreasonable, under Pennsylvania law.

14. Whether this court erred in failing to consider other evidence presented relating to the reasonableness of the rates, other than simply conservation, in forming its findings/conclusions of law with respect to the reasonableness of the rates.

15. Whether this court erred, as a matter of law, in concluding that defendant's rates are discriminatory.

16. Whether this court erred, as a matter of law, in concluding that defendant's rates are unreasonable, as related to services provided.

17. Whether this court erred, as a matter of law, in concluding that defendant's rates are unreasonable.

18. Whether this court erred, as a matter of law, in concluding that defendant's rates are arbitrary.

19. Whether this court erred, as a matter of law, in overturning defendant's rate structure.

20. Whether this court erred, as a matter of law, in relating this court's conclusion with respect to fairness to the legally defined concept of reasonableness, as applies

in like cases, under Pennsylvania law.

21. Whether this court erred, in supplementing its conclusion on what the rate should be for defendant, in the place of the board of the defendant, as appointed through the democratic process.

22. Whether this court erred in only allowing testimony in the form of a preliminary injunction hearing without counsel for the parties knowing that the same would be used as the evidence on the trial on the merits with respect to the same.

23. Whether this court erred in ordering relief, in the form of its amended verdict, not specifically requested by plaintiffs.

24. Whether this court erred in ordering relief, in the form of its amended verdict, beyond the scope of its authority.

25. Whether this court erred in ordering relief, in the form of its amended verdict, requiring the parties to form an agreement, to the benefit of plaintiffs.

26. Whether this court erred, as a matter of law, in issuing the amended verdict.

## DISCUSSION

This court shall address the issues which have not been addressed in its prior opinion. Many of the issues are duplicative or have already been addressed.

Defendant submits in its fourth contention that this court erred in finding that defendant's rates are not established to promote conservation because plaintiffs failed to present testimony and/or evidence with respect to this finding. This issue is without merit.

Defendant mischaracterizes this court's finding. Defendant's rates promote conservation when they are applied correctly to each EDU; however, in the case sub judice, they are not applied correctly to multi-family dwellings. Two parts of defendant's tiered metered rate schedule, the ready-to serve charge and the EDU charge, are correctly billed. There are twenty-one charges for each individual apartment. The problem lies with the consumption charge. It is not applied to each individual unit, but to the collective whole. It cannot promote conservation because there is no reward for conserving. It is impossible for twenty-one units to use the same amount of water as one individual unit. Therefore, penalties accrue within the first week. The tenants and plaintiffs are penalized for living in and owning apartments. If those same tenants rented entire homes, they would pay less for their water than they do renting an apartment.

It is admirable that defendant wants to give a break to the small property owner, but it has a duty to act fairly on all customers' behalf. On the one hand, defendant recognizes that the apartment dwellers live separately by charging each apartment unit a ready-to-serve charge and the EDU charge. Thus, it collects forty-two fees from each complex. On the other hand, those same apartments are treated as one unit for consumption charges in order to collect higher rates for usage. Thus, defendant is not even consistent in the application of the schedule to these customers. Conservation of water cannot be a goal if it can never be achieved by these consumers.

Defendant's eleventh assignment of error is that this court erred in finding or concluding as a matter of law that defendant must use the same rate calculation for all residential households for a rate to be reasonable under Pennsylvania law. This complaint is meritless.

This court did not find that all residential households had to use the same rate calculation. Group homes, nursing homes, and college dormitories, for example, are residential, but by their nature, must consume more water than single family dwellings and should be subject to different rates. This court found that there is no difference between a single family who rents a house and a single family who rents an apartment; if anything, the renters of a house may consume more water because there may be more family members living in the house and more uses for water. This court found that the rates were arbitrarily applied to single families in apartments. Moreover, the defendant did not apply those rates consistently in billing the three charges.

Defendant's nineteenth assertion is that this court erred as a matter of law in overturning defendant's rate schedule. This contention is without merit. This court did not overturn the rate schedule; it did not do anything to the rate schedule. This court found that defendant did not apply its rate schedule evenly to plaintiffs and those similarly situated. It ordered defendant to charge the consumption rates to single families at the single family rate and in accordance with the other two prongs of the three-pronged bill it generates.

Defendant's twenty-second complaint is that this court erred in allowing testimony in the form of a preliminary injunction hearing without counsel for the parties knowing that the same would be used as the evidence on the trial on the merits with respect to the same. This contention is frivolous.

The parties acknowledged at the hearing on March 18, 2014, that the testimony for the trial would be similar to that as was presented for the injunction. In the interest of judicial economy, this court determined that it would

incorporate the testimony for the preliminary injunction into the trial testimony. The trial was scheduled for April 15, 2014. By stipulation dated April 14, 2014, the parties agreed that they would present no additional testimony at the hearing scheduled for April 15, 2014 and that they would submit memoranda of law in support of their positions by May 21, 2014. Thus, the parties determined not to present additional evidence; they were not blindsided by the course that this case took. Parties may, by stipulation, resolve questions of fact or limit the issues, and if the stipulations do not affect the jurisdiction of the court or due order of the business and convenience of the court, they become the law of the case. *Moorhead v. Crozer Chester Medical Center*, 564 Pa. 156, 765 A.2d 786, (2001).

Defendant's twenty-fifth contention is that this court erred in ordering the parties to form an agreement to plaintiffs' benefit. This is a frippery. This court ordered the parties to come to an agreement, if they could. If they were unable to agree on a stipulated order, this court would then hear argument and make a decision on those unresolved issues. The purpose of a stipulated order was to benefit both parties. Only defendant knew the costs of the meters and their installation. Only the parties knew the amount of money that was escrowed. The parties had the figures and the rates to determine the payments. For these reason, this court suggested that the parties submit a stipulation of the costs and fees.

The remaining issues have already been addressed in either this opinion or the opinion which accompanied the verdict. This court submits that its verdict should be affirmed and the appeal denied.