Cynthia CLARK, Appellee,

v.

PHILADELPHIA COLLEGE OF OSTEO-
PATHIC MEDICINE, Christine Viola,
D.O., David A. Bevan, D.O. Eugene
Wyszynski, D.O., John Simelaro, D.O.,
Pete Hedrick, D.O.: Gail Shirley, D.O.,
Harold Tabaie, D.O., Edward Silverman,
D.O., and Osteopathic Medical of Phila-
delphia Clinical Assocs.

**Appeal of John SIMELARO, D.O.
and Philadelphia College of
Osteopathic Medicine.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1996.

Filed March 12, 1997.

Reargument Denied May 23, 1997.

R. Bruce Morrison, Philadelphia, for appellants.

Carole Kafrissen, Philadelphia, for appellee.

Before EAKIN, SCHILLER and MONTEMURO*, JJ.

MONTEMURO, J.

This is an appeal from a judgment for $1,582,789.38 plus interest entered in favor of Appellee in a medical malpractice case.

In June of 1990, Appellee instituted the instant negligence action against, *inter alia*, Drs. Christine Viola, John Simelaro, and Eugene Wyszynski, and the Pennsylvania College of Osteopathic Medicine (PCOM),[1]

---

* Retired Justice assigned to Superior Court.

1. PCOM was substituted as a party in place of General Practice Associates of PCOM, Osteopathic Medical Center of Philadelphia, and Hospital of Philadelphia College of Osteopathic Medicine. Four additional defendants were dismissed prior to trial, and one settled separately.

claiming that as a result of unnecessarily protracted treatments with the corticosteroid prednisone administered for idiopathic thrombocytopenia purpura (ITP) and sarcoidosis,[2] Appellee developed avascular necrosis, a deterioration of the skeletal structure, particularly affecting the hips, shoulders, and knees.[3] After a three week trial, Dr. Viola, Appellee's family practitioner, was found not to have been negligent, and by agreement, the hospital accepted vicarious responsibility for Dr. Simelaro, Appellee's pulmonary specialist, and did not appear on the verdict sheet. Shortly before the verdict was rendered, a settlement was reached between Appellee and Dr. Wyszynski, the treating hematologist. The jury award, $4,100,000 equally apportioned between the two remaining defendants, was molded by the court to $1,582,789.38, including delay damages, plus interest. Appellants, Dr. Simelaro and PCOM, unsuccessfully moved for a new trial, disputing not Appellee's medical condition, but alleged errors committed by the court during the course of the trial. This appeal followed, raising five issues.

We note preliminarily the well-settled rule that the decision whether to grant a new trial is within the sound discretion of the trial court whose ruling will not be overturned on review absent a clear abuse of discretion or an error of law. *Chiaverini v. Sewickley Valley Hospital,* 409 Pa.Super. 630, 598 A.2d 1021 (1991), *allocatur denied,* 530 Pa. 659, 609 A.2d 167 (1992).

Appellants first argue that the court's adverse inference instruction to the jury concerning the absence of certain office notes from Appellee's file should not have been given and warrants retrial. Appellants contend that Dr. Simelaro's explanation for the missing documents was adequate to obviate the necessity for such an instruction, and, given the explanation, not only did the trial court abuse its discretion by failing to make the proper decision, but abdicated its responsibility altogether by allowing the jury to determine the propriety of the charge once given.

The decision whether to tell the jury an unfavorable inference may be drawn from the failure of a party to produce some circumstance, witness, or document is also one which lies within the sound discretion of the trial court and which will not be reversed absent manifest abuse. *O'Rourke on Behalf of O'Rourke v. Rao,* 411 Pa.Super. 609, 614, 602 A.2d 362, 364 (1992); *see also* Wigmore, Evidence § 285, at 162 (1940 ed.). Appellant relies upon this court's decision in *Farley v. SEPTA,* 279 Pa.Super. 570, 421 A.2d 346 (1980), to support his assertion that the trial court in this case erroneously treated the jury's consideration of Appellant's justification for the missing documents as permissive rather than conclusive.

The general rule is that:

[w]here evidence which would properly be part of a case is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him.

*Haas v. Kasnot,* 371 Pa. 580, 584–85, 92 A.2d 171, 173 (1952) (citation omitted). *See also Piwoz v. Iannacone,* 406 Pa. 588, 178 A.2d 707 (1962); *Davidson v. Davidson,* 191 Pa.Super. 305, 156 A.2d 549 (1959).

*Farley,* however, is distinguishable on its facts and of no assistance to Appellants here. There the missing evidence was testimony by the driver of a bus which had struck the rear

---

2. ITP is a condition caused when antibodies attach to blood platelets, dragging them into the spleen, the liver and other tissues where they are then destroyed. The diminution in the number of platelets in turn causes, *inter alia,* mucosal, pulmonary and gastrointestinal hemorrhaging, and is fatal if left untreated.

Sarcoidosis is a condition in which granulomatous tissue forms, and can spread into lungs and chest cavity, bones, skin and eyes. It is life threatening only in a small percentage of cases.

3. Prednisone, a recognized treatment for both ITP and sarcoidosis, can, among other possible side effects, alter the way calcium is absorbed in the intestines and made available to the bones causing osteonecrosis. To minimize the occurrence of these reactions, attempts are made to keep dosages of the medication, which are variable from patient to patient, as low as the underlying disease process will allow, and administration time as short as possible.

of the plaintiff's automobile at an intersection causing injuries. *Farley,* 279 Pa.Super. at 574, 577, 421 A.2d at 348, 350. The defendant bus company failed to produce the driver, explaining through witnesses that he had suffered a massive stroke, and was unable to speak intelligibly or to respond appropriately to simple questions. *Id.* at 578–80, 421 A.2d at 350–51. The trial court instructed the jury that if they found that the explanation given for his absence to be unsatisfactory, an adverse inference could be drawn. *Id.* at 577, 421 A.2d at 350. On review, this court ruled that because the reason given for the absence of the driver was both satisfactory and obviously so, treatment of the inference as permissive rather than conclusive was reversible error. *Id.* at 580, 421 A.2d at 351. This set of circumstances is not analogous to Appellants' situation.

Here, Dr. Simelaro offered two explanations for the absence of the notes. The first was provided during depositions when Dr. Simelaro testified that his office files were "thinned" every five years, that is, unimportant materials were removed, and such a procedure had been carried out in 1988. However, when Appellee received the file in its entirety during discovery in 1990 after suit had been initiated, no notes were to be found there. Appellant now concedes that the thinning process is irrelevant to the absence of the notes.

At trial, Appellant Simelaro repudiated his deposition testimony, effectively, as the trial court found, denying that he had taken any notes. He described having only scribbled "notations" (the distinction between this and notes is left unplumbed) from which he dictated a consultation letter in the presence of the patient. Along with this procedure, he currently asserts that the file was "tailored to and consistent with his role as a consultant" on Appellee's case rather than as her primary or treating physician. (Appellants' Brief at 14) (This distinction too is left unexplored).

Thus, of the theories offered by Appellant to account for the absence of the notes, the first is by his own admission inoperative, and the second neither satisfactory nor at all obvious. The trial court properly instructed the jury using the precise language of Standard Jury Instruction 5.06, and no error can be assigned to the decision to do so.

■ Appellants next contend that the trial court criticized Dr. Viola for testifying in a manner favorable to Appellant Simelaro, and in so doing abused its discretion.

Both Dr. Simelaro, Appellee's pulmonary specialist, and Dr. Viola, Appellee's primary care physician, were represented by the same attorney. During his appearance, Dr. Simelaro testified that Dr. Viola had breached her duty of care toward Appellee. Dr. Viola, who testified later in the proceedings, however, made no corresponding accusation of negligence toward Dr. Simelaro, but rather defended him. During Dr. Viola's testimony, the court interrupted the proceedings, excused the jury and questioned counsel as to the inconsistencies, pointing out that the divergence in testimony could constitute a conflict of interest. Appellant Simelaro now complains that the court's actions, which are characterized as "chastising" the witness in an attempt to intimidate her, were not only an improper attempt to influence Dr. Viola's testimony, but also "signified a predisposition and bias against co-defendant Simelaro." (Appellant's Brief at 18). Appellants further accuse the court of gamesmanship in expressing its concerns, implying that the court is responsible for the jury's having found Dr. Simelaro, the accuser, and not Dr. Viola, the accused liable for Appellee's injuries.

Appellant provides us with no explanation of how the court's comments can have influenced the jury, which did not hear them. Moreover, Dr. Viola, was clearly not intimidated by the court's remarks since her testimony, once she resumed the stand, remained unaltered, a fact admitted by counsel during argument after the interruption. What Appellants proffer here is a nebulous assertion that, to some unknown extent and in some unknown way, the mere fact of the interruption communicated to the jury a lack of impartiality, thus influencing it to a degree neither actually measurable nor susceptible even to guess. However, no relief can be forthcoming for surmise; far less, as here, for wishful thinking.

■ For their third assignment of error, Appellants claim that the trial court improperly allowed counsel to suggest a formula for pain and suffering during closing argument. Appellants refer to a drawing of a triangle with a horizontal line through it used by counsel during closing to suggest that Appellee's past and future medical expenses, wage loss and lost future earning capacity totalling over $2,000,000, represented only the "tip of the iceberg," and that her pain and suffering were what remained below the horizontal "water line." Appellants claim that this schematic drawing contravenes the prohibition against estimating or suggesting to a jury the amount of damages to be awarded, especially for pain and suffering in a personal injury case. *Clark v. Essex Wire Corp.*, 361 Pa. 60, 63 A.2d 35 (1949); *Atene v. Lawrence*, 456 Pa. 541, 318 A.2d 695 (1974).

■ The trial court, within whose discretion the presentation of closing speeches remains, *Catina v. Maree*, 272 Pa.Super. 247, 415 A.2d 413 (1979), *rev'd. on other grounds*, 498 Pa. 443, 447 A.2d 228 (1982), overruled Appellants' objections and motions for mistrial, concluding that the objection was "specious, frivolous, and simply a reaction" to counsel's closing. (N.T. 10/13/94 at 74). It is well-settled that whether to declare a mistrial is yet another decision within the discretion of the trial court, whose vantage point enables it to evaluate the climate of the courtroom and the effect on the jury of closing arguments. *Speer v. Barry*, 349 Pa.Super. 365, 503 A.2d 409 (1985). The trial court in its Opinion observed that "[w]hether the tip of the iceberg argument is called rhetoric, analogy or metaphor, it was not a direct statement suggesting any specific sum or arbitrary amount." (Trial Ct. Op. at 25). We agree with this assessment, and find that as such, the drawing did not justify the declaration of a mistrial.

■ Next, it is argued that there was reversible error in the trial court's refusal to allow certain questions to be posed on cross-examination to Appellee's life plan expert. This witness, Arlene Sloan, was a rehabilitation nurse whose area of expertise covered the requirements and costs of Appellee's projected life care management, that is, the types of physical objects and personal assistance necessitated by Appellee's physical condition both currently and in the future. Appellants wished to inquire of the witness whether and to what extent the effects of an automobile accident, which occurred subsequent to Appellants' medical treatment of Appellee, had been taken into account when Appellee's life care plan had been prepared. The trial court refused to allow the questions on the basis that they sought to explore causation, a matter both beyond the scope of direct examination and beyond the witness' area of expertise.

■ Appellants state that their questions were occasioned because "the thrust of Nurse Sloan's testimony was that the items of equipment and personal assistance which she testified Ms. Clark would need were necessitated by the injuries resulting from her prednisone therapy." (Appellants' Brief at 31). However, the trial court points out that there was no testimony concerning causation, that is, the witness never rendered an opinion as to why Appellee was in her particular physical situation, and should not have done so. Decisions as to the permissible subjects of cross-examination are within the sound discretion of the trial court, *In re Townsend's Estate*, 430 Pa. 318, 241 A.2d 534 (1968), *cert. denied, Cochran v. Morris*, 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968), and we find no abuse of that discretion since Appellants have offered no convincing justification for introducing a subject outside the witness' expertise.

■ Appellant's final assertion is that the trial court erred in its interpretation of a settlement agreement and joint tortfeasor release, resulting in an incorrectly molded verdict and a mistaken award of delay damages.

The agreement referred to was reached by Appellee, Dr. Wyszynski and the Medical Professional Liability Catastrophe (CAT) Fund, and provided that Appellee would receive $400,000 from the parties to the agreement. It also contained the following language:

It is understood that I am not hereby releasing any claims or demands that I have against Christine Viola, D.O., David

A. Bevan, D.O., John Simelaro, D.O., General Practice Associates of PCOM, Osteopathic Medical center of Philadelphia, and Hospital of Philadelphia College of Osteopathic Medicine (hereinafter referred to as "Non–Settling Defendants").

(Release at 3–4).

However, Dr. Simelaro, and PCOM having conceded its vicarious liability for Simelaro, moved that the verdict against Simelaro be molded to $200,000, arguing that the following language was controlling:

Additionally, for and in consideration of the monies promised to be paid, herein, by the Medical Professional Liability Catastrophe Loss Fund, **the undersigned specifically waives the right to recover all monies in excess of $200,000 individual primary limits of the Non–Settling Defendants for which they may be found liable.**

(Release at 5). (emphasis added).

 It is axiomatic that releases are construed in accordance with traditional principles of contract law, fundamental to which is the directive that "the effect of a release must be determined from the ordinary meaning of its language." *Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 328–29, 561 A.2d 733, 735 (1989) (citations omitted). Here the wording of the release contains a reservation of rights against the non-settling defendants, but also limits the exercise of those rights to recovery of the $200,000 individual primary limits. Appellants are correct in assuming that the rationale for this restriction on damages was imposed by the CAT Fund, which drafted the agreement, to insulate itself from the statutory obligation to indemnify any non-settling defendants against whom a verdict larger than the individual limits might be brought in. To further buttress the CAT Fund's negotiated immunity, the agreement also promises to hold harmless any releasees from "any and all claims demands or actions ... relating to or arising from" the underlying action. It cannot therefore be said that restraint on damages was not within the

contemplation of the parties, only that it was not within Appellee's calculations. Moreover, as *Buttermore* observes,

Parties with possible claims may settle their differences with each other upon such terms as are suitable to them .... However improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case.

*Id.* at 328–29, 561 A.2d at 735.

 None of the exceptions is apparent here, or even alleged; thus we are compelled to restrict Appellee's recovery to the terms of the bargain she has made—$200,000 each from the two non-settling defendants, Appellants.[4]

As to Appellants' contention that delay damages were wrongly assessed, the waiver clause does, as Appellants' point out, operate to prevent the recovery of "all monies" over $200,000 regardless of classification.

Order denying Appellants' motion for a new trial is affirmed. Judgment awarding Appellee $1,582,789.38 is vacated, and case is remanded for entry of an order consistent with this Opinion.

SCHILLER J., files a dissenting statement.

SCHILLER, Judge, dissenting.

I agree with the Majority that the plain language of the joint tortfeasor's release limited plaintiff's recovery to $200,000.00 per non-settling defendant. However, I respectfully disagree with the conclusion that "none of the (*Buttermore* ) exceptions is apparent here," op. p. 207, and on that basis I would remand this case to the Court of Common Pleas for further proceedings.

In *Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 561 A.2d 733 (1989), the Supreme Court summarized the law on releases and cogently described the sometimes harsh reality of entering into one, to wit:

---

**4.** Appellants allege, without explanation, that there should be only one $200,000 recovery. However, both Dr. Simelaro and PCOM are named defendants, and while Dr. Simelaro was found liable by the jury, PCOM admitted vicarious liability, a separate and separately compensable matter.

However improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case.

*Id.* at 328–29, 561 A.2d at 735. Here, where you have non-settling defendants seeking the advantage of an agreement which specifically sought to preserve rights against them, and where that agreement conveys tremendous benefits to those defendants, for which they neither negotiated nor rendered consideration, one could conclude that there was an "accident." Moreover, this record, as well as the trial court's opinion, raises at least the spectre of a "mutual mistake" between the signatories to the joint tortfeasors' release; for it is clear from appellee's argument that the language as it was written was not reflective of appellee's understanding. The unanswered question then is what was the CAT Fund's understanding when it included this language in the agreement. I would remand this case to the Court of Common Pleas for a factual finding on these issues.