**Max C. MALONEY, Individually and as Administrator of the Estate of Linda E. Maloney, Appellant**

v.

**VALLEY MEDICAL FACILITIES, INC., d/b/a The Medical Center, Beaver, Heritage Valley Health System, Inc., Beaver Internal Medicine Association, Tri–State Medical Group, Inc., Brighton Radiology Associates, P.C., Maurice Prendergrast, M.D., and Richard E. Brennan, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 24, 2007.

Filed March 7, 2008.

Reargument Denied May 16, 2008.

---

**6.** "Absent any justifiable excuse, [a defendant's] failure to appear [is] willful." *Her-* *nandez,* supra at 240.

Gregory B. Heller, Philadelphia, for Maloney, appellant.

Deborah D. Olszewski, Pittsburgh, for Tri-State, appellee.

Deborah A. Kane, Philadelphia and John W. Jordan IV, Pittsburgh, for Valley Medical, appellee.

BEFORE: MUSMANNO, ORIE MELVIN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 This is an appeal from an order entering summary judgment in favor of Appellees/defendants below in an action based on claims of medical negligence. Finding error in the trial court's nullification of the reservation of rights clause in a tortfeasors release, we vacate the judgment to the extent of the reservation and remand.

¶ 2 In December of 1988, Appellant's decedent, Linda Maloney, presented to Appellee Maurice Prendergrast, M.D., with complaints of severe pain in her back and upper right chest. Radiographs of the area revealed a scapular abnormality, tentatively identified as an aneurismal bone cyst,[1] for which the radiologist recommended further clinical correlation. No further investigation was ordered, and the images on these films were not discussed with Mrs. Maloney. Another x-ray, performed in 1991 also for an evaluation of chest pain, showed no change from the previous film, nor did further films taken in 2001 preparatory to a cardiac catheterization and read by Appellee Richard E. Brennan, M.D., whose report made no mention of the scapular lesion. In 2002, however, x-rays and subsequent MRI's taken after Mrs. Maloney presented with pain in the area of the right scapula revealed a large mass which, after two biopsies, was diagnosed as osteogenic sarcoma metastatic to the lung. In 2005, despite radical surgical treatment and chemotherapy, Mrs. Maloney died.

¶ 3 This action was commenced in February of 2004. On October 24, 2006, Appellant executed a Joint Tortfeasor Release, which in pertinent part provides:

1. FOR AND IN CONSIDERATION of the sum of $500,000 paid to the undersigned, receipt of which is hereby acknowledged; and for the promise of payment in the amount of $700,000 made by the Medical Care Availability and Reduction of Error Fund, the undersigned do fully release and discharge Richard E. Brennan, M.D., The Medical Protective Company on behalf of Richard E. Brennan, M.D., Brighton Radiology Medical Associates. P.C., Valley Medical Facilities, Inc. d/b/a/ the Medical Center, Beaver, Heritage Valley Health System, Inc., Tri-State medical Group, Inc., Beaver, Internal Medical Association, the Medical Care Availability and Reduction of Error Fund, all other persons, governmental enti-

---

1. This is a benign lesion which produces a bubbly radiographic appearance, and is known to accompany and closely overlie other neoplastic bone lesions. While the latter may become malignant, an aneurismal bone cyst does not. (Report of Kris Sperry, M.D., 9/8/05, at 2).

ties, associations and corporations whether or not named herein subject only to the provisions in paragraphs 2 and 3 below, their heirs, executors, administrators, successors, attorneys, assigns and insurers (hereinafter referred to collectively as "Releasees"), from any or all causes of actions, claims and demands of whatsoever kind on account of all known and unknown injuries, losses and damages allegedly sustained by the undersigned and, specifically, from any claims or joinders for sole liability, contribution, indemnity or otherwise as a result of, arising from, or in any way connected with all medical, professional health services rendered by the above named Health Care Providers, and on account of which Legal Action was instituted by the undersigned in the Court of Common Pleas of Beaver [ ] Co., PA [ ]. . . . The undersigned does understand, and agrees, that the acceptance of said sum is in full accord and satisfaction of a disputed claim and that the payment of said sum is not an admission of liability of any party named herein.

2. It is understood that I, Max C. Maloney, am not hereby releasing any claims or demands that I have against Maurice D. Prendergrast, M.D. However, I am agreeing to limit my potential recovery against Maurice D. Prendergrast, M.D. . . .

3. It is further understood and agreed, however, that if it should be determined that Maurice D. Prendergrast, M.D., is jointly or severally liable to the plaintiffs with any person or entity herein released, in tort or otherwise, the claim against and damages recoverable from Maurice D. Prendergrast, M.D., **shall be** reduced by the amount determined by the sum of the pro-rata share of legal responsibility or legal liability for which the parties herein released are found to be liable as a consequence of the aforesaid medical care or treatment. It is intended that this Release shall comply with and be interpreted in accordance with the Uniform Contributions among Tortfeasors Act as enacted and amended in Pennsylvania.

(Joint Tortfeasors Release, 10/24/06) (emphasis original).

¶ 4 On December 16, 2006, Appellant moved for partial summary judgment on grounds that there was no disputed issue of fact concerning Appellee Prendergrast's failure to disclose to the decedent the lesion revealed by the 1988 x-ray of her right scapula. Shortly thereafter Appellees Prendergrast, Tri–State, and Beaver Internal Medicine Association filed their own motion, as did Valley Medical Facilities, The Medical Center, Beaver, and Heritage Valley Health Center, each asserting that the language of the release operated to insulate them from liability, so that all claims against them should be dismissed. After hearing, the trial court agreed, entering the order underlying this timely appeal.[2]

¶ 5 Appellant has presented two issues on appeal arguing first that summary judgment was improperly granted as his claims against Appellee Prendergrast were specifically preserved by an express reservation of rights, and then that the release only discharged the medical facilities cov-

---

**2.** The order, *inter alia,* also denied Appellant's summary judgment motion, and dismissed Brighton Radiology Associates and Richard E. Brennan, M.D., whose removal from the case Appellant does not challenge.

ered by the order from his direct liability claims while preserving issues of vicarious liability against them. We address these interrelated claims together, the latter first.

■ ¶ 6 We first note that [i]n reviewing a grant of summary judgment, an appellate court may disturb the order of the trial court only where there has been an error of law or a clear or manifest abuse of discretion. Nevertheless, the scope of review is plenary; the appellate court shall apply the same standard for summary judgment as the trial court.

\* \* \* \* \* \*

The record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the presence of a genuine issue of material fact must be resolved against the moving party.

*Albright v. Abington Mem. Hosp.*, 548 Pa. 268, 696 A.2d 1159, 1165 (1997) (citations omitted).

■ ¶ 7 The law pertaining to releases is well settled: "[i]t is axiomatic that releases are construed in accordance with traditional principles of contract law, fundamental to which is the directive that 'the effect of a release must be determined from the ordinary meaning of its language.' " *Clark v. Philadelphia College of Osteopathic Medicine*, 693 A.2d 202, 207 (Pa.Super.1997), *appeal dismissed as improvidently granted*, 557 Pa. 487, 734 A.2d 859 (1999) (citing *Buttermore v. Aliquippa Hosp.*, 522 Pa. 325, 561 A.2d 733, 735 (1989)). Interpretation of a contract is a matter of law, and as such the Superior Court's standard of review is plenary; it is not bound by the conclusions of the trial court. *Consolidated Rail Corp. v. Delaware River Port Auth.*, 880 A.2d 628, 631–32 (Pa.Super.2005), *appeal denied*, 587 Pa. 714, 898 A.2d 1071 (2006).

■ ¶ 8 Appellant argues that because Appellees Prendergrast and Brennan were joint tortfeasors, the effects of the release are governed by the Uniform Contribution Among Tortfeasors Act (UCATA), 42 Pa. C.S.A. §§ 8321–27. Section 8326 of the Act provides that discharge of one joint tortfeasor does not operate to discharge the other(s) unless so specified in the release. Juxtaposed to Appellant's argument and provisions of the Act is the language of the Release, which defines the extinguished claims as those "as a result of, arising from or in any way connected" to medical professional services provided by all listed health care providers except Appellee Prendergrast.

¶ 9 This Court has found words such as "arising out of" or "arising from" to connote causal connection. *See Tuscarora Wayne Mutual Ins. Co. v. Kadlubosky*, 889 A.2d 557, 563 (Pa.Super.2005) (citation omitted). Appellant insists that his vicarious claims against all Appellee health care providers including Appellee Prendergrast are preserved by the statutory provision. We, however, find that the comprehensive words of the Release are consistent with section 8326, since they specifically and comprehensively effectuate the discharge of all listed health care providers save Prendergrast by encompassing any and all acts capable of incurring either direct or indirect, that is, vicarious or ostensible, liability. The result is the extinction of all Appellant's claims against Appellees other than Prendergrast.

¶ 10 The only surviving right is that which is directed at seeking redress on the "claims or demands" referable to allegations of direct negligence by Appellee Prendergrast alone, not his practice groups or the hospitals with which he was affiliated, that is, his principals. The significance of this distinction is determina-

tive, as it provides the major focus of Appellant's appeal and the basis of the trial court's order.

¶ 11 Our Supreme Court in *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380, 1381 (1989), opined that "an agent and its principal are not joint tortfeasors under UCATA when the liability of the principal is vicarious liability and is not based upon the principal's independent actionable fault." This Court extended the *Mamalis* holding in *Pallante v. Harcourt Brace Jovanovich, Inc.*, 427 Pa.Super. 371, 629 A.2d 146 (1993). There, we concluded that "where a principal who is vicariously liable for the negligent act of its agent is released by the injured party after settlement of the claim, the release is a release of the agent as well and no suit may be maintained against the agent for its independent act of negligence." *Id.* at 150. Having found the claims against Appellee Prendergrast's practice groups and his hospital affiliations extinguished, the trial court extrapolates the proposition that "[a] vicarious or ostensible agency claim based upon Prendergrast's failure to diagnose and treat Mrs. Maloney clearly falls under the penumbra of the professional health care services provided by" the health care providers listed in the Release. (Trial Ct. Op. at 14).[3] The court then explains that because of the scope of the "penumbra," the reservation of rights contained in, especially, paragraph 2 of the Joint Tortfeasors Release "is of no moment." (*Id.* at 15).

¶ 12 As already explained, we find the language of Paragraph 1 of the Release sufficiently expansive to cover all claims "arising from" the care provided by any defendant here. The concept of a penumbra is therefore unnecessary and perhaps misleading as it suggests a degree of unc-

larity not present in the Release language; even the trial court finds that "there are no terms that are obscure due to indefiniteness." (*Id.* 13). Further, we decline to accept the trial court's construction of the Release invalidating the reservation of rights, thereby rendering nugatory repeatedly expressed contractual language preserving the injured party's right to sue a tortfeasor.

¶ 13 In this regard, we find germane the well settled principle that "[a]n agreement or instrument which reduces legal rights which would otherwise exist is strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the parties." *Galligan v. Arovitch*, 421 Pa. 301, 219 A.2d 463, 465 (1966). Here, the MCARE Fund drafted the release, presumably, as did its predecessor CAT Fund in *Clark, supra,* "to insulate itself from the statutory obligation to any non-settling defendant against whom a verdict larger than the individual limits might be brought in." *Id.* Paragraph 1 is deliberately and intentionally inclusive, while Paragraph 2 is quite the reverse. Pennsylvania contract law prescribes that, "an interpretation will not be given to one part of the contract which will annul another part of it." *Capek v. Devito*, 564 Pa. 267, 767 A.2d 1047, 1050 (2001) (citation omitted). This is precisely the effect of the trial court's interpretation of the Release to mean that the omission of any iteration of the continued viability of Appellant's vicarious liability claim against Appellee Prendergrast acts to extinguish it along with the reservation clause. Such a view ignores the exception language in Paragraph 1 as well as dismissing the explanation of the reserved right in Paragraph 2.

---

3. We note this assertion expresses tacit acceptance of Appellant's claim that the exemption language does indeed refer to acts implicating only direct liability.

¶ 14 Moreover, the release explored in *Pallante, supra,* contained no reservation of rights, and provided no guidance as to the effects of such a restriction on the more general language of discharge. In *Clark* we considered, albeit under different circumstances, a reservation of rights which, because it contained a restriction on the exercise of those rights in the form of a limit on the amount recoverable from the non-settling defendants, inured to the injured person's disadvantage. We did, however, uphold the reservation.

¶ 15 Further, Pennsylvania contract law, recognizing that the intention of the parties is paramount in any interpretive effort, explains that the court should adopt a construction "which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Tuscarora, supra* at 560 (citations omitted). Here, the trial court's interpretation not only annuls a major portion of the Release, but ignores the express objective of the settlement, that is, to limit further litigation while not forestalling it completely.

¶ 16 The latter point arises from the nature of this matter. In *Pallante, supra,* we explained that the reason for the rule that release of the principal also releases the agent is that "the law seeks to protect an injured party's right to payment for a single injurious act from either a vicariously liable principal or an independently liable agent." *Id.* Here, a jury might well consider to be multiple rather than singular acts of negligence Appellee Prendergrast's alleged misdiagnosis of Mrs. Maloney's condition, and his repeated failure to treat or even to disclose the existence of the bone cyst during the fourteen years prior to her death. This set of circumstances bears no resemblance to the single injury examined in *Pallante,* nor is the trial court's resolution of this matter congruent with its responsibility to implement the intent of the parties.

¶ 17 For the foregoing reasons, we find that the trial court erred in concluding that summary judgment was properly entered in favor of all Appellees. Accordingly, we vacate the judgment as to Appellee Prendergrast, and remand for further proceedings consistent with this opinion.

¶ 18 Judgment vacated; case remanded; jurisdiction relinquished.

¶ 19 Counsel's Praecipe to Withdraw Appearance is hereby GRANTED.