Daniel F. ROSS, Appellant

v.

FOREMOST INSURANCE COMPANY,
Sentry Services, Inc., Appellee.

Superior Court of Pennsylvania.

Argued Jan. 27, 2010.

Filed June 11, 2010.

Kenneth R. Behrend, Pittsburgh, for appellant.

Jamie L. Lenzi, Pittsburgh, for appellee.

BEFORE: BENDER, PANELLA and OTT, JJ.

OPINION BY OTT, J.:

¶ 1 Daniel F. Ross appeals from the order entered on February 23, 2009 granting a motion for summary judgment filed by Sentry Services, Inc. ("Sentry") and dismissing his complaint. After careful review, we affirm.

¶ 2 In April of 2001, Ross purchased a 1984 Travel Trailer, a wheeled, 35 feet long by eight feet wide, licensed trailer that could be pulled on the open highway by a hitch. After purchasing the trailer, he secured insurance coverage from Foremost Insurance Company ("Foremost"), through an insurance agent, Sentry. Ross selected Sentry because he wanted Foremost insurance and Sentry was one of the brokers listed in the phone book as an agency that dealt with Foremost. During a telephone conversation with a Sentry agent, he was asked what type of vehicle he wished to insure, the size of the vehicle, the condition of the vehicle, and the address of the campground where the trailer was parked. Ross provided a description of the travel trailer, stated that the trailer was to be used for seasonal living, and it was to be parked at the Indian Brave Campground in Harmony, Pennsylvania. The campground bordered the Connoquenessing Creek and Ross' lot was within 1,500 feet the creek.

¶ 3 On April 6, 2001, Sentry sent Ross two copies of a Mobile Home Insurance Worksheet ("Worksheet") and requested that he complete the questions and sign the second page of the document. Ross complied and submitted a check for $221.75 for coverage of the trailer. He also disclosed the proximity of the trailer to the creek on the Worksheet. A footnote to the inquiry stated that, due to such proximity, "[the] risk will qualify only if flood insurance is excluded from the coverage." Mobile Home Insurance Worksheet, 4/6/2001, at 2.

¶ 4 Several weeks later, Ross received a copy of an insurance policy from Foremost titled "Mobile Home Insurance Policy"

(the "Policy"). The Policy specifically excluded loss caused by "[f]lood, water, surface water, waves, tidal water or overflow of a body of water from any source including spray, whether or not driven by wind[.]" Foremost's Mobile Home Policy, at 7. He also received a mobile home declarations page, which listed general information about Ross's policy with respect to his trailer and notified of available features, liability coverage choices, and items that lowered his premium. Additionally, under the bold-print heading, "For your information," the notice stated: "If you need flood coverage, you should contact your representative to ask about obtaining the coverage through the National Flood Insurance Program." Sentry's Motion for Summary Judgment, Exhibit E, at 3. Ross admitted when he received the policy and declarations page, he glanced at them and filed them away. Ross did not read the insurance policy or the declarations page. Ross also stated that each year following his purchase of the Policy, he received a new declarations page which contained the same information as the original declarations page.

¶ 5 On September 17, 2004, flooding of Connoquenessing Creek, incidental to Hurricane Ivan, damaged Ross' trailer and its contents. Three days later, he submitted a claim with Foremost for damage to the trailer. On September 23, 2004, Foremost wrote a letter to Ross denying his claim because the Policy did not cover for flood loss.

¶ 6 On January 20, 2005, Ross filed a complaint against Foremost and Sentry alleging negligence and violation of the Unfair Trade Practices and Consumer Protection law ("UTPCPL"),[1] which was later amended on March 15, 2005. Pleadings and discovery were exchanged.

¶ 7 On January 23, 2008, Ross entered into a settlement agreement and release (the "Release") of Foremost. On December 10, 2008, Sentry filed a motion for summary judgment, asserting the release of Foremost effectively applied to Sentry as well, because, as alleged in the complaint, Sentry was Foremost's agent and the two were not joint tortfeasors. Sentry contended the release of Foremost as principal operated as a release of Sentry as its agent.

¶ 8 Sentry also argued it was not negligent and did not owe a duty to inspect the property, recommend flood insurance coverage, or advise that floods were excluded from the policy. Moreover, Sentry stated Ross' argument, that he should recover because his trailer was a travel trailer and not a mobile home, was unfounded where he admitted he did not intend to travel with the trailer on the open road.

¶ 9 Sentry also contended that Ross' claim for consumer fraud failed because he could not make a *prima facie* case evidencing any false or misleading statement on the part of Sentry and justifiable reliance by Ross, causing the loss.

¶ 10 Finally, Sentry argued there was no evidence to put the issue of punitive damages to the jury. Ross opposed Sentry's motion. On February 23, 2009, the trial court granted judgment in favor of Sentry and against Ross and dismissed his complaint with prejudice. Ross filed this timely appeal.[2]

1. 73 P.S. § 201–1 *et seq.*

2. On April 1, 2009, the trial court ordered Ross to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b) within 25 days. He filed a timely concise statement pursuant to Pa.R.A.P. 1925(b) on April 22, 2009. The trial court issued an opinion under Pa.R.A.P. 1925(a) on May 14, 2009.

¶ 11 Ross raises the following three issues on appeal: whether the trial court erred in granting Sentry its motion for summary judgment (1) by finding the release of Foremost acted as a release of Sentry as its agent; (2) by finding that Sentry did not violate the UTPCPL; and (3) by finding that Sentry had no duty to not unilaterally change the coverage and to inspect.

¶ 12 We begin with our standard of review in granting a motion for summary judgment:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Erie Ins. Exch. v. Larrimore*, 987 A.2d 732, 736 (Pa.Super.2009) (quotation omitted).

¶ 13 In Ross' first argument, he alleges his claim against Foremost was based on six separate affirmative misrepresentations whereas his claim against Sentry was based on the omission of material facts concerning the extent of coverage. Therefore, he asserts these claims were distinct and did not constitute vicarious liability. Because Ross considers these claims distinguishable, he states the release of Foremost did not release Sentry as well. Moreover, Ross claims the trial court erred in interpreting the release under the rules of contract law.

¶ 14 In finding that Sentry was an agent of Foremost, the trial court concluded "[t]he release of a principal effectively releases the agent, and the release of an agent effectively releases the principal. That is so despite any provision in the release of one that purports to preserve claims against the other arising from the same body of events." Trial Court Opinion, 5/14/2009, at 4. The court relied on the holdings provided in *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380 (1989) and *Pallante v. Harcourt Brace Jovanovich, Inc.*, 427 Pa.Super. 371, 629 A.2d 146 (1993).

¶ 15 In *Mamalis*, the plaintiff brought actions against Atlas Van Lines and its agent, McClain Moving Company, to recover damages for the loss of his personal property in a fire. *Mamalis*, 522 Pa. at 216, 560 A.2d at 1381. The plaintiff settled his claim against McClain and executed a release which purported to preserve his claim against Atlas. *Id.* The trial court found Atlas and McClain acted as principal and agent, who were severally liable and fell within the Uniform Contribution Among Tortfeasors Act's joint tortfeasor definition. *Id.* at 217, 560 A.2d 1381. The court determined the release of one would not discharge the liability of the other. *Id.* The matter went to trial and the jury awarded a verdict in favor of the plaintiff. *Id.* On appeal, this Court reversed and concluded that a vicariously liable principal and agent were not joint tortfeasors. The Pennsylvania Supreme Court affirmed this Court's determination and held:

> absent any showing of an affirmative act, or failure to act when required to do so, by the principal, termination of the claim against the agent extinguishes the derivative claim against the principal. A claim of vicarious liability is inseparable

from the claim against the agent since any cause of action is based on the acts of only one tortfeasor. There was no evidence introduced to establish acts of the principal that would make Atlas's liability anything other than vicarious. *Id.* at 221, 560 A.2d at 1383–1384.

¶ 16 In *Pallante, supra*, this Court drew upon the decision in *Mamalis* and concluded its holding was applicable to circumstances where the injured party releases the principal rather than the agent. *Pallante*, 629 A.2d at 150.

■ ¶ 17 As Ross correctly indicated, *Pallante* was recently overruled in part by *Maloney v. Valley Med. Facilities, Inc.*, 603 Pa. 399, 984 A.2d 478 (2009).[3] In *Maloney*, the plaintiff alleged medical negligence on the part of two doctors and vicarious liability on the part of the institutional defendants associated with these physicians. The plaintiff entered into a settlement in a joint tortfeasor release with the one doctor. The release expressly stated the plaintiff was not releasing any claims against the second doctor but agreed to limit his potential recovery against the second doctor based on the provisions of the release. The trial court granted the defendants' motion for summary judgment, finding the language of the release operated to insulate them from liability.

¶ 18 On direct appeal, this Court distinguished the matter from *Pallante*, noting the *Pallante* release contained no reservation of rights and did not provide any guidance as to the effects of such a restriction on the more general language of the release. *Maloney v. Valley Med. Facilities, Inc.*, 946 A.2d 702, 708 (Pa.Super.2008). This Court agreed the *Maloney* release encompassed all claims against the institutional defendants. However, it stressed "releases are construed in accordance with traditional principles of contract law." *Id.* at 706. Therefore, it vacated the judgment in part based on the fact that the trial court's interpretation annulled a major portion of the release regarding the exclusion of the doctor and also ignored the express objective of the settlement and the intention of the parties entering into the agreement. *Id.* at 708.

¶ 19 The Pennsylvania Supreme Court upheld this Court's determination:

In the scenario entailing **a plaintiff's surrender of vicarious liability claims only and express preservation of claims against an agent, we hold that the parties to a settlement should be afforded latitude to effectuate their express intentions.** To the extent the Superior Court's decision in *Pallante* holds to the contrary, *see Pallante*, 629 A.2d at 149 ("Given the supreme court's decision that principal and agent are not

---

3. Because *Maloney* was recently decided, we note:

In Pennsylvania, the general rule is that we apply the law in effect at the time of the appellate decision. *Blackwell v. Commonwealth, State Ethics Comm.*, 527 Pa. 172, 589 A.2d 1094, 1099 (Pa.1991), *citing Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (Pa.1983). Thus, we adhere to the principle that "a party whose case is pending on direct appeal is entitled to the benefit of changes in the law which occurs before the judgment becomes final." *Commonwealth v. Brown*, 494 Pa. 380, 431 A.2d

905, 906–7 (Pa.1981). *See also Christy v. Cranberry Volunteer Ambulance Corps., Inc.*, 579 Pa. 404, 856 A.2d 43 (Pa.2004) (noting the general principal that changes in the law are to be applied to pending cases). *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 308, 883 A.2d 511, 517–518 (Pa. 2005). While the trial court did not apply the incorrect law at the time of its decision, Ross is "entitled to the benefit of changes in the law which occurs before the judgment becomes final." *Id.* (quotation omitted). Therefore, we are compelled to apply *Maloney* to our analysis.

joint tortfeasors, we conclude that the release of the principal acts as a release of the agent."), it is disapproved. [n13]

---

n13 The Superior Court's effort to distinguish *Pallante* is insufficient. Under its reasoning, claims entailing a single act of negligence on the part of a tortfeasor would be subject to a different rule than claims entailing multiple acts of negligence on the part of a single tortfeasor. *See Maloney,* 946 A.2d at 708. Such a division yields potential confusion and does not address the more fundamental concerns also pertaining in the single-act paradigm.

*Maloney,* 603 Pa. 399 at 412, 984 A.2d at 487 (emphasis added).[4]

■ ¶ 20 Turning to the instant matter, the release between Ross and Foremost provides, in pertinent part:

KNOW ALL PERSONS by these presents, that DANIEL F. ROSS (hereinafter referred to as Releasor) being of full legal age and sound mind for and in consideration of the sum of Eight Thousand Four Hundred Thirteen ($8,413.00) Dollars paid on behalf of FOREMOST INSURANCE COMPANY (hereinafter referred to as Releasee) to me in hand paid, the receipt of which is hereby acknowledged, do hereby release and forever discharge the said Releasee, their ... agents ... from any liability, causes of actions, suits, damages, judgments, claims, court costs, contributions, litigation costs, attorneys' fees, and any demands whatsoever in law or equity, either sounding in negligence, contract, and/or alleged violations of the Unfair Trade Practices and Consumer Protection Law which Releasor ever had, now has, or may have in the future against said Releasee[.]

. . . .

It is expressly understood that the Releasor does not release from liability, but expressly reserves the right to make claim against any and every other person and/or entity, specifically SENTRY INSURANCE SERVICES, who is also named as a Defendant in the above-referenced action. Releasor reserves the right to make the claim that others, and not the party released hereby, are solely liable to Releasor for injuries, damages, losses, and/or other damages applicable by law. In the event that other persons, entities, corporations, or tortfeasors are found to be jointly liable to Releasor with the Release, then the execution of this Release shall operate as a reduction and satisfaction of Releasor's claim for the recovery of damages against such other persons, entities, corporations, or tortfeasors to the extent of the relative pro rata percentage share of the released parties' liability.

Full and Final Release, 1/23/2008, at 2 (emphasis added).

¶ 21 Like the release in *Maloney,* the release in the present matter expressly reflected Ross' reservation of rights against Sentry. In accordance with the *Maloney* holding, Ross "should be afforded latitude to effectuate [his] express intentions." *Maloney,* 603 Pa. 399 at 412, 984 A.2d at 487. Therefore, Sentry was excluded from the effects of the release even though it may have been acting as an agent for Foremost.

■ ¶ 22 In Ross' second argument, he alleges the trial court erred in granting Sentry's motion for summary judgment by finding that Sentry did not violate the

---

**4.** The *Maloney* Court distinguished *Mamalis* and stated that it did not provide controlling authority because it dealt with different circumstances surrounding the release of the principals. *Maloney,* 603 Pa. 399 at 414, 984 A.2d at 488.

UTPCPL.[5] Ross claims Sentry violated the UTPCPL because its "failure to disclose the travel trailer exclusion in a [m]obile [h]ome policy was not harmless" and qualified as "a material misrepresentation." Ross' Brief at 20. Ross states Sentry misrepresented the policy obtained on his behalf provided coverage for a travel trailer when it did not. He also alleges Sentry represented it had the knowledge and skill necessary to provide insurance coverage when Ross asserts it did not. Ross states when he requested a travel trailer policy, he reasonably expected to receive a travel trailer policy. He complains he was not told the mobile home policy excluded flood coverage. Ross contends Sentry committed fraud under the UTPCPL by alleging Sentry made a false representation "under the classic principles of 'bait and switch' " and there was a causal connection between the representation and the loss he suffered. *Id.* at 30.

> With respect to the UTPCPL, as this Court explained in *Skurnowicz v. Lucci*, 798 A.2d 788 (Pa.Super.2002),
>
>> An individual who purchases goods, including real estate, may bring a private action to recover damages caused by another's "act or practice declared unlawful" by the UTPCPL. 73 P.S. 201–9.2. *See also In re Zisholtz*, 226 B.R. 824, 831 (Bankr.E.D.Pa.1998).
>>
>> Section 201–3 provides that it is unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce" as defined by section 201–2(4)(i)–(xxi). In addition to twenty specifically enumerated practices, the Act provides that "engaging in any other fraudulent or deceptive conduct which creates a

likelihood of confusion or of misunderstanding" constitutes an "unfair or deceptive act or practice." 73 P.S. § 201–2(4)(xxi). In order to establish a violation of this catchall provision, "a plaintiff must prove all of the elements of common-law fraud." *Sewak* [*v. Lockhart*], 699 A.2d [755,] 761.

*Id.* at 794.

In turn, to establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result.

*Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa.Super.2006).

¶ 23 In *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 447, 521 A.2d 920, 921 (1987), the plaintiff applied for an insurance policy providing disability coverage "that would enable him to make his mortgage payments in the event of his injury, without regard to where such injury might occur, or whether [the plaintiff] might be eligible for worker's compensation benefits." The insurance agent who handled the plaintiff's request admitted that he understood the plaintiff wanted coverage whether or not he was eligible for workmen's compensation benefits. *Id.* at 447–448, 521 A.2d at 921. The agent informed the plaintiff of the occupational classifications only in terms of premium costs and not scope of coverage. *Id.* at 448, 521 A.2d at 921–922. Shortly thereafter, the plaintiff was injured on the job where he received workers' compensation

---

**5.** Ross alleges Sentry violated two subsections of UTPCPL, 73 P.S. § 201–2(4)(v) and (vii). These subsections are definitions of "unfair methods of competition" and "unfair or deceptive acts or practices." We will assume Ross meant Sentry violated 73 P.S. § 201–3, which makes the acts of "unfair methods of competition" and "unfair or deceptive acts or practices" unlawful.

benefits but was denied disability benefits. *Id.* The plaintiff stated that he never saw the policy. *Id.* At trial, the jury returned a verdict in favor of the plaintiff. *Id.* at 450, 521 A.2d at 923.

¶ 24 On appeal, the Supreme Court held when "an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." *Id.* at 455, 521 A.2d at 925. The Court noted:

> a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for.

*Id.* at 454, 521 A.2d at 925.

¶ 25 Here, Ross contacted a Sentry agent, Elizabeth Orosz, and "expressed [his] interest in purchasing insurance for a travel trailer that [he] had recently purchased." Ross Dep., 6/16/2006, at 36. He also told Orosz he needed insurance for his golf cart and deck. *Id.* at 41. Ross admitted that he did not request flood insurance. *Id.* at 42. Orosz stated she asked him what kind of trailer it was and what he was using it for. Orosz Dep., 1/26/2099, at 43. She told him the insurance "would cover fire, theft, vandalism, malicious mischief and personal property, personal affects" as well as the deck and golf cart. *Id.* at 45. Orosz sent Ross the Worksheet, which he filled out and returned. Ross then received the Policy for his trailer.

¶ 26 Based on this testimony, Ross fails to establish the first prong of common law fraud, a material misrepresentation. Despite the title of the policy, he received the coverage he asked for. The insurance company did not deny his claim because it was a travel trailer and not a mobile home. The policy provided did not exclude travel trailers. It denied his claim because he lacked flood coverage, which he did not make a condition when he was purchasing the policy. Ross admitted that he did not request flood insurance. He acknowledged he received the Worksheet, which stated that, due to such proximity of his trailer to water, "[the] risk will qualify only if flood insurance is excluded from the coverage." Mobile Home Insurance Worksheet, 4/6/2001, at 2. Ross received a copy of an insurance policy from Foremost titled "Mobile Home Insurance Policy" (the "Policy"), which explicitly excluded flood damage from coverage. He also received a mobile home declarations page, and under the bold-print heading, "For your information," the notice stated: "If you need flood coverage, you should contact your representative to ask about obtaining the coverage through the National Flood Insurance Program." Sentry's Motion for Summary Judgment, Exhibit E, at 3. Moreover, Orosz informed Ross of what was covered under the insurance and she did not state flood damage. Lastly, Ross admitted the Policy delivered to him contained the flood exclusion, but prior to the Hurricane Ivan incident, he had not read the policy or its exclusions. Unlike *Tonkovic*, this was not a case of "bait and switch" as Ross alleges. Therefore, Ross has failed to set forth a claim for common law fraud or a violation of the UTPCPL. Accordingly, the trial court did not err in granting Sentry's motion for summary judgment with respect to this issue.

¶ 27 In Ross' final argument, he alleges the trial court erred in granting Sentry's motion for summary judgment by finding that Sentry did not have a duty to inspect.

Ross states the trial court's analysis of the issue was flawed because there was no need to inspect since the Sentry agent was aware of the risk of flood. He claims Sentry had a duty to not unilaterally change the coverage from "travel trailer" to "mobile home" without notifying him and making sure he understood the change. Ross states Sentry changed his coverage from travel trailer to mobile home coverage and did not discuss the need or availability of flood coverage.

¶ 28 Before we may address the merits of Ross' argument, we must determine whether he has properly preserved his argument. "It is well-settled that '[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.' Pa.R.A.P. 302(a)[.]" *Commonwealth v. Bullock*, 948 A.2d 818, 822 (Pa.Super.2008). In Ross' complaint and his 1925(b) statement, he made no reference to Sentry's alleged duty to not unilaterally change the coverage from "travel trailer" to "mobile home" without notifying him. Therefore, this claim is waived.[6]

¶ 29 Despite its err in construing the release, the trial court properly granted Sentry's motion for summary judgment because Ross' underlying claims of fraud and negligence are without merit. There is no genuine issue as to any material fact and it is clear Sentry is entitled to a judgment as a matter of law. *See Erie Ins. Exch., supra.*[7]

¶ 30 Order affirmed.

---

**6.** Furthermore, if this claim were not waived, Ross has made no showing other than a different title on the policy that he did not get the coverage he asked for. He also has not established that he would have gotten flood insurance if he got a travel trailer policy. Ross has not provided evidence that flood coverage is standard in travel trailer policies, which would justify his assumption that flood insurance comes automatically with such a policy and does not need to be requested. Moreover, at Orosz's deposition, she stated "Foremost has flood coverage only on travel trailers that have collision on it and are moved around. Stationary [travel trailers do] not have flood coverage[.]" Orosz Dep., 1/26/2099, at 32–33. Ross has not established he would have qualified for the travel trailer policy that provided flood coverage. Therefore, Ross's negligence claim would have failed.

**7.** "To the extent that our decision may be construed as employing an analysis different than that used by the trial court, we note that [w]e are not bound by the trial court's rationale, and may affirm its ruling on any basis." *Gresik v. PA Ptnrs., L.P.*, 2009 PA Super 253, ¶ 28 n. 3, 989 A.2d 344 (Pa.Super.2009).