J-S45003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: V.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: P.B., PARAMOUR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 591 EDA 2020 |

Appeal from the Order Dated January 22, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001500-2019

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 18, 2020**

P.B. ("Paramour") appeals the January 22, 2020 permanency review order, as amended, finding that she physically abused V.J. We affirm.

V.J. was born in February 2017. On September 13, 2019, J.S. ("Mother") took then-two-and-one-half-year-old V.J. to Children's Hospital of Philadelphia ("CHOP") with a severe leg injury that was ultimately diagnosed as a displaced femur fracture that was expected to require surgery. The ensuing investigation revealed that, although Mother struck V.J. repeatedly on the prior evening, he was not in any physical distress on the morning of September 13, 2019, when Mother left him in Paramour's care for four hours in the one-bedroom apartment that she shared with Paramour and Paramour's uncle, and three other children. When Mother returned to the apartment, V.J. was in visible distress, screaming and crying, and his leg was swollen. Mother

immediately contacted emergency services, who transported him to CHOP. She subsequently informed a CHOP social worker that Paramour had stated that she did not witness any fall or injury and simply heard V.J. crying from another room before finding him on the floor with an injured leg. Paramour claimed that her attempts to contact Mother by telephone and Facebook were unsuccessful.

During the DHS investigation, Mother denied that she was responsible for the injuries, noting that V.J. was well, sleeping on the living room couch, when she left the home to go shopping on the morning of the incident. Mother stated that Paramour was the only other caregiver, and when Mother returned home, V.J. had been moved to his bed and was in extreme pain. Mother admitted that she had struck the child the night before, but denied striking his legs.

The CHOP staff informed DHS that V.J. was in extreme pain as a result of the injury which they suspected was non-accidental and likely caused by an object and/or forced trauma. However, the CHOP medical report indicated that fractures of this kind could be caused by accidental and non-accidental mechanisms in ambulatory children. Accordingly, the medical staff was unable to rule out non-accidental trauma. At the conclusion of the DHS investigation, the Child Protective Service ("CPS") report was indicated for abuse.

The juvenile court temporarily transferred legal and physical custody to DHS, who placed V.J. with his maternal great-aunt, Y.J. Thereafter, on November 13, 2019, it adjudicated V.J. dependent. As of the date of the order that is the genesis of this appeal, Mother continued to exercise weekly supervised visitation.

During the subsequent hearing on the September 2019 CPS report, DHS presented the testimony of Brian William Brennan, M.D., who testified as an expert in pediatric child abuse, and Katherine Paczkowski, the DHS investigator.[1] Mother testified on her own behalf. Paramour did not attend the hearing, but she was represented by counsel. By order dated January 22, 2020, as amended, the juvenile court adjudicated V.J. a victim of abuse pursuant to 23 Pa.C.S. § 6303, as perpetrated by Paramour. The abuse allegations in the CPS report were founded as to Paramour.[2]

In issuing its decision, the juvenile court announced from the bench:

[Paramour] was joined as a party to this case and represented by counsel. [She] was served for today's hearing and failed to appear.

. . . .

_____

[1] We observe that the notes of testimony and the trial court opinion misstate Ms. Paczkowski's surname.

[2] Although the DHS report identified both Mother and Paramour as indicated perpetrators of abuse, the juvenile court found that DHS presented insufficient evidence to adjudicate Mother as a perpetrator of abuse. **See** Permanency Review Order-Amended, 1/22/20, at 2; **see also** N.T., 1/22/20, at 80.

[T]he [c]ourt finds that because of [Paramour's] absence and failure to appear, despite appropriate service, . . . [t]he [c]ourt may infer that had she testified[,]. . . the evidence would establish that she was indeed a perpetrator of child abuse against the child.[3]

N.T., 1/22/20, at 80-81. Significantly, the Court continued,

The court also finds that based upon the testimony as to the vagaries of the explanation, the inconsistencies of Paramour throughout the course of the examination and investigation by DHS, the court further finds that those inconsistencies further suggest that Paramour was concealing the real reason behind the injury to the child, and that is that she somehow perpetrated child abuse against this child and caused the broken femur. The court finds that [DHS] established that Paramour was a perpetrator of child abuse against the child, V.J.

*Id*.

On February 19, 2020, Paramour filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which asserted that 1) the finding of child abuse was not supported by clear and convincing evidence; 2) the juvenile court erred in applying an adverse inference regarding her failure to appear at the evidentiary hearing; and 3) the court's findings of fact were not supported by the record. While Paramour reserved the right to amend the statement upon receipt of the notes of testimony, no revisions followed.

---

[3] Pursuant to the adverse inference rule, "The failure to produce evidence which would properly be part of the case and which is within the control of a party whose interest it would naturally serve, militates strongly against such party and raises in the absence of explanation an **inference of fact** that it would be unfavorable to him." *Piwoz v. Iannacone*, 178 A.2d 707, 711 (Pa. 1962) (emphasis in original).

On July 6, 2020, this Court remanded the matter to the trial court to determine whether counsel abandoned Paramour as he failed to file a brief. We retained jurisdiction, and on July 21, 2020, the juvenile court issued an order stating its determination that counsel did not abandon Paramour. Counsel was directed to file a brief within fourteen days, which he filed on August 4, 2020.

Paramour raises the following issues for our review:

1. Did the trial court err in finding that Paramour was a perpetrator of child abuse in the absence of clear and convincing evidence that she intentionally, knowingly, or recklessly caused or created a likelihood of abuse through a recent act or failure to act?

2. Did the trial court commit an error of law and abuse of discretion by applying the presumption of perpetrator's identity under 23 Pa.C.S. § 6381(d) to Paramour where DHS failed to prove the existence of child abuse?

Paramour's brief at 8.

Our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted); *see also In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).

In *In the Interest of J.R.W.*, 631 A.2d 1019, 1024 (Pa.Super. 1993), we explained that, pursuant to the doctrine of incorporation, the Juvenile Act's definition of dependent child subsumed the definition of child abuse outlined in the Child Protective Services Law ("CPSL"). Thus, the two laws "must be applied together in the resolution of child abuse complaints." *Id*. at 1023. We reasoned,

> The Legislature intended a detailed and specific definition of abuse to leave no doubt as to the capacity of the trial court, which in this case can only be the Juvenile Court, to make a finding and determination that a child has been abused. In its capacity as a trial judge, the Juvenile Court judge will look and must look to the above definition of child abuse in a case referred by the child protective service agency to the Court under petition for review of dependency when child abuse has been alleged.

*Id*.

The court in *J.R.W.* also stressed that the juvenile court's determination of whether child abuse occurred must be supported by clear and convincing evidence. *Id*. "Clear and convincing evidence" requires:

> that the witnesses must be found to be credible; that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order; and that their testimony is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth.

*In re Interest of J.M.*, 166 A.3d 408, 423 (Pa.Super. 2017) (citations omitted). Critically, "Innuendo and suspicion alone are not enough to compel a finding of child abuse." *Id*. at 424 (quotations omitted).

At the outset, we observe that Paramour's challenge to the juvenile court's finding of *prima facie* evidence of abuse under 23 Pa.C.S. § 6381(d), which it employed to identify Paramour as the perpetrator of abuse, is waived because Paramour failed to preserve this claim in her Rule 1925(b) statement. **See Krebs v. United Refining Co.**, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues). Paramour's Rule 1925(b) statement contended that the juvenile court erred in reaching its factual conclusions as to the finding that child abuse occurred and in applying an adverse inference against her for failing to attend the evidentiary hearing. As Paramour neglected to assert any error relating to the determination of her identity as the perpetrator of abuse under 23 Pa.C.S. § 6381(d), that issue is waived.[4]

Furthermore, to the extent that Paramour references § 6381(d) in her remaining argument that DHS failed to prove the predicate child abuse, the certified record belies this assertion. Referring to the definition of child abuse

---

[4] Assuming *arguendo* that the claim was preserved, it is meritless. As noted in the body of this memorandum, the record confirms that V.J. was fine when Mother left him in the sole care of Paramour on the morning of September 13, 2019, and that his leg was severely injured upon her return. N.T., 1/22/20, at 28, 45, 53, 74, 77-78. Moreover, Paramour failed to rebut the presumption that she was the perpetrator of abuse under 23 Pa.C.S. § 6381(d).

in 23 Pa.C.S. § 6303(b), a now deleted portion of the CPSL, Paramour posits that the testimony and medical evidence that DHS adduced at the hearing was insufficient to demonstrate that V.J. was the victim of child abuse. In support of this contention, Paramour asserts that the medical testimony regarding abuse was equivocal, and that the aggregate of the remaining evidence concerning Paramour's explanations for the injury, and the adverse inference drawn from her failure to appear at the hearing, were insufficient to establish child abuse by clear and convincing evidence.[5] She posits, "relying on three factors: the injury, the failure to explain it and [Paramour's] failure to appear at the hearing, the court found [Paramour] had abused [V.J.]." Paramour's brief at 12. For the following reasons, we discern no abuse of discretion.

---

[5] Additionally, while preserved in the Rule 1925(b) statement, Paramour's brief does not assert that the juvenile court erred in applying the adverse inference rule against her. She merely argues that the inference was insufficient to buttress the deficient medical evidence and testimony that DHS presented to establish child abuse. **See** Paramour's brief at 12. ("Clearly, this inference cannot be stronger proof than the disbelieved testimony of the alleged perpetrator."). As Paramour failed to challenge the court's reliance upon the adverse inference doctrine, we do not address its applicability *sua sponte*. **See In re A.C.**, 991 A.2d 884, 897 (Pa.Super. 2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); **see also In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa.Super. 2017).

The applicable version of the CPSL, effective June 12, 2018, defines child abuse, in pertinent part, as "intentionally, knowingly or recklessly[6] . . . [c]ausing bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1)(1). In addition, the CPSL outlines the following relevant terms. Bodily injury is an "[i]mpairment of physical condition or substantial pain[;]" perpetrator includes, *inter alia*, "[a] paramour or former paramour of the child's parent[;]" and a "[p]erson responsible for the child's welfare" is "[a] person who provides permanent or temporary care, supervision, mental health diagnosis or treatment, training or control of a child in lieu of parental care, supervision and control." 23 Pa.C.S. § 6303(a).

Moreover, as it relates to Paramour's argument that DHS did not prove that V.J. was an abused child, 23 Pa.C.S. § 6381 provides, in part:

> **(d) Prima facie evidence of abuse.--**Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child **shall be prima facie evidence of child abuse by the parent or other person responsible** for the welfare of the child.

23 Pa.C.S. § 6381(d) (emphasis added).

As our Supreme Court explained in **In re L.Z.**, **supra** at 1185, "evidence that a child suffered injury that would not ordinarily be sustained but for the

---

[6] The CPSL refers to 18 Pa.C.S. § 302 with respect to the definitions of intentionally, knowingly, and recklessly. As the juvenile court found *prima facie* evidence of abuse in accordance with 23 Pa.C.S. § 6381(d), a determination that Paramour neglected to challenge in her Rule 1925(b) statement, we do not expound on the statutory definitions herein.

acts or omissions of the parent or responsible person is sufficient to establish

that the parent or responsible person perpetrated that abuse unless the parent

or responsible person rebuts the presumption." The High Court continued,

> The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

*Id*.

In explaining its application of § 6381(d) to conclude that V.J. was the

victim of abuse, the juvenile court reasoned that,

> Th[e c]ourt heard testimony from Mother and found that her testimony was credible and persuasive. Mother consistently said she did not know how the injury to [V.J.] happened and that she was not home at the time the injury occurred. She stated she left [V.J.] in the care of [Paramour] the morning of 9/13/2019, and when she returned [Paramour] told her [V.J.] was bitten by a spider[, presumably to explain the swelling]. Mother admitted to smoking marijuana and arguing with [Paramour] the day before on 9/12/2019, however, she never [wavered] in her testimony that [V.J.] was fine and asleep when she left the home, and when she returned [V.J.] was crying and injured.
>
> [Paramour], on the other hand, appeared at the previous hearing on 11/13/2019 and signed a subpoenaed [sic] to appear and testify on 1/22/2020[.] However, [Paramour] failed to appear [at the hearing] and there is no explanation on the record as to her absence. Mr. Birley, Esquire, [Paramour's] attorney, also does not provide the [c]ourt with a reason as to her absence at the child abuse hearing. Where a witness is available, possesses special knowledge relevant to the case, and would provide testimony that would not be cumulative and would be ordinarily expected to favor that party, a fact-finder may draw an adverse

- 10 -

inference from that witness's failure to testify.  [Paramour] did not testify or present credible evidence that she did not function in any capacity as a caregiver or that [V.J.'s] injuries were accidental.

. . . .

[Paramour] reported to Ms. [Paczkowski] that Mother had hit [V.J.] with a stick and other things, the night before on 9/12/2019, however, Dr. Brennan testified the severity of the fracture would have required immediate attention.  [Paramour] also told Ms. [Paczkowski] that she heard a scream from [V.J.] the morning of 9/13/2019 and found [V.J.] injured.  Mother reported that [Paramour] stated that [V.J.] had been bitten by a spider and that caused the leg to swell.

Th[e c]ourt finds that the evidence establishes that [Paramour] was the perpetrator of child abuse against [V.J.] by causing bodily injury to [V.J.] through a recent act or failure to act." (N.T., 1/22/2020, [at 81]).  She failed to testify and rebut the *prima facie* presumption in 23 Pa. C.S. § 6381(d) that she committed child abuse upon [V.J.], either by her actions or her failure to act.

Trial Court Opinion, 4/23/20, at 22-25.

The certified record supports the court's conclusion that V.J. was the victim of physical abuse.  Dr. Brennan, the child abuse expert, testified that a child with a fracture such as V.J.'s should be brought for treatment "immediately."  *Id*. at 39.  He further indicated that this was a painful injury and that V.J. would not have been able to sleep comfortably through the night with such an injury.  *Id*. at 37, 44-45.  Although Dr. Brennan testified that such an injury can be caused accidentally, he could not rule out abuse in this case without knowledge of a mechanism.  *Id*. at 32-33.  When asked to explain the lack of mechanism, Dr. Brennan responded, "Sure, like no one saw

what happened so I can't tell you if it was abuse or it wasn't abuse." *Id*. at 33. He continued,

> What we say . . . in our report is that because we don't have a mechanism we can't tell DHS one way or the other as to what happened and[,] without that, you know, mechanism[,] we feel that an investigation is warranted, given the fact that there was this injury that no one seems to know what happened in a setting where there were some other social kind of concerns as well.

*Id*. The ensuing DHS investigation substantiated the child abuse. *See* 23 Pa.C.S. 6303 (defining substantiated child abuse as "child abuse as to which there is an indicated report or founded report.").

The certified record confirms that Paramour was the only adult in the home when the injury occurred. While Mother admitted to striking the child on the previous evening, the DHS investigator, Ms. Paczkowski, reported that Paramour confirmed that V.J. "seemed fine the morning of September 13th, prior to him waking up." N.T., 1/22/20, at 57. Mother corroborated this aspect of Paramour's account, noting that, when she left the home on the morning in question, V.J. was sleeping comfortably on the couch but the child was in visible distress when she returned. *Id*. at 28, 44-45, 74, 77-79.

Furthermore, Paramour did not present to the court credible evidence that she was not the caregiver or that V.J.'s injuries were accidental. While "suspicions are not a substitute for clear and convincing evidence," *J.M.*, *supra* at 423, the certified record supports the trial court's credibility determinations against Paramour. Paramour provided DHS multiple inconsistent explanations for V.J.'s injury, *i.e.*, 1) Mother hit V.J. the night

- 12 -

prior; 2) the swelling was caused by a spider that bit V.J.; and 3) V.J. simply fell to the floor while unattended in an adjoining room. N.T., 1/22/20, at 56, 61, 68, 75. Critically, two of these explanations contrast with the undisputed testimony that V.J. was not in distress when Mother left him in Paramour's care on the living room couch and, more importantly, that the medical evidence that V.J. suffered a transverse displaced femur fracture that required surgery to repair. *Id*. at 25. Moreover, while Dr. Brennan indicated that such an injury can be caused accidentally, he could not rule out physical abuse absent knowledge of the actual mechanism, information which Paramour failed to present at the hearing.

In summary, DHS presented clear and convincing evidence that V.J. suffered an extreme leg injury of the type that would not ordinarily have been sustained but for the acts or omission of Paramour, the person responsible for his care when the injury occurred. In addition, Paramour declined to present any evidence to rebut the presumption that she perpetrated the abuse. Hence, pursuant to *In re L.Z.*, *supra*, the evaluation of the validity of the presumption rested properly with the juvenile court, who evaluated the credibility of the *prima facie* evidence presented by DHS. As the testimony outlining the DHS investigation confirmed the probability that V.J. was the victim of child abuse, the certified record supports the court's finding of abuse pursuant to 23 Pa.C.S. § 6303(b.1). Accordingly, we do not disturb it.

For all of the foregoing reasons, we affirm the juvenile court order adjudicating Paramour a perpetrator of child abuse against V.J.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *11/18/2020*